State of Minnesota; *ex rel.* William J. Hahn, Attorney General, *vs.* St. Paul & Sioux City Railroad Company.

May 26, 1886.

**Corporation — Quo Warranto—Forfeiture of Charter.**—The supreme court has jurisdiction by *quo warranto* to enforce the forfeiture of the charter of a corporation.

**Same — Railway Company—Failure to build Part of Line.**—The respondent (formerly the Minnesota Valley Railroad Company) did not forfeit its corporate franchise, nor any of its franchises, except such as pertained to that particular line or branch, by failure to construct that part of its line "from St. Anthony, via Minneapolis, to a point of junction at Shakopee."

**Same—Conveyance of Railroad.**—It did not forfeit its corporate franchise by discontinuance of its business as a railroad company in consequence of having conveyed its railroad to the Chicago, St. Paul, Minneapolis & Omaha Railway Company, pursuant to Sp. Laws 1881, *c.* 228.

*Quo warranto.* The writ required the respondent to show cause why its charter, liberties, privileges and franchises should not be adjudged and decreed forfeited to the state, and its existence as a corporation annulled.

*William J. Hahn,* Attorney General, and *James M. Martin,* for the State.

*Gordon E. Cole* and *John D. Howe,* for respondent.

Gilfillan, C. J.    In this case the jurisdiction of this court to issue writs of *quo warranto* is for the first time brought in question.    The act conferring on the court the power to issue the writ was passed in 1876.    The constitution (section 2, art. 6) prescribes that the court shall have "original jurisdiction in such remedial cases as may be prescribed by law, and appellate jurisdiction in all cases, both in law and equity, but there shall be no trial by jury in said court."    It is evident that the term "remedial cases" has here but a limited signification, and cannot extend to all remedies for wrongs; for a very important part of the machinery to administer such remedies in most cases, to-wit, the jury, is withheld from the court.    It has been the understand-

ing of the court, as we think, from the beginning, and we think also of the bar, as it evidently has been of the legislature, that the cases intended by the term "remedial cases" are those where the remedy is afforded summarily, through certain extraordinary writs, such as prohibition, *mandamus, certiorari,* and *quo warranto.* Any greater or less extensive meaning could hardly be given to the term without making it so indefinite as to make it difficult to say what it means. We are satisfied that is the sense in which the term was used in the constitution. Taking that to be the meaning, the grant of power by the legislature to the court in cases of *quo warranto* is ample and unlimited.

There is nothing in the suggestion of respondent that the legislature did not intend to vest the power, or that, if so, it ought not to be exercised in cases where the statute furnishes some other adequate mode of reaching the same result, as is furnished, in cases falling within the scope of the writ of *quo warranto,* by chapters 76, 79, Gen. St. 1878. Those chapters were in force when the act of 1876 was passed, and of course the legislature, in passing that act, must have intended that the court should have, and also should, in proper cases, exercise, jurisdiction by *quo warranto,* notwithstanding the provisions of those chapters. As between the remedy in this court by *quo warranto* and that by action in the district court, it is for the attorney general, to whom the interests of the state in such cases are intrusted, to determine which he will pursue.

Two grounds of forfeiture against this corporation are alleged: *First,* the sale by it, pursuant to the provisions of Sp. Laws 1881, *c.* 228, of its railroad, and the consequent suspension by it of all its business as a railroad company; *second,* its failure to survey, locate, construct, complete, or operate the branch it was authorized and empowered to construct and operate from St. Anthony, *via* Minneapolis, to a point of junction at Shakopee city.

The second we will consider first. By Sp. Laws 1864, *c.* 1, *subc.* 2, the franchises of the respondent (being part of those which passed to the state upon the foreclosure against the Root River Valley & Southern Minnesota Railroad Company, and by the forfeiture of its franchises) were vested in it. Section 5 of the act attached a condition to the grant that it should construct and equip its road and branches

within eight years from March 3, 1864, and provided that upon failure so to do all unbuilt portions thereof, "with the properties, rights and franchises appertaining thereto, shall be absolutely forfeited, and shall revert to the state without any other act or ceremony whatever." Laws 1865, c. 15, § 4, repeats the condition and proviso, adding the words "legislative or judicial." It is clear from this that it was not the intention that a failure to construct a portion of its road or branches should be cause of forfeiture of its corporate franchise, or of its franchise to maintain and operate the constructed portion of its road, but that the forfeiture should be restricted to the unbuilt portion, with the property rights and franchises appertaining thereto. *State* v. *Southern Minn. R. Co.*, 18 Minn. 21, (40.) And it is also clear that it was intended that a failure should, *ipso facto,* work a forfeiture without any judicial sentence, or legislative declaration, or any act on the part of the state.

The fact of failure to build this branch is admitted, and it consequently appears that many years ago the duty of the corporation to build that branch ceased. Its suspension of its business as a railroad company, so far as relates to that branch, cannot be alleged against it as a cause of forfeiture of its corporate franchise.

Sp. Laws 1881, c. 228, authorizes and empowers the Chicago, St. Paul, Minneapolis & Omaha Railway Company "to purchase the St. Paul & Sioux City railroad, extending from the city of St. Paul to the Missouri river, at Sioux City, Iowa, and the appurtenances and equipments thereof, (and, save as hereinafter excepted, the franchises and corporate rights necessary to the full use of said property,) and all proprietary or connecting railroads hitherto acquired in any manner by the St. Paul & Sioux City Railroad Company, upon such terms and conditions as may be agreed upon between the said Chicago, St. Paul, Minneapolis & Omaha Railway Company and the St. Paul & Sioux City Railroad Company; and to take a conveyance of said railroad or railroads, and appurtenances and equipments, (in which conveyance shall be excepted, however, and left in the St. Paul & Sioux City Railroad Company, its charter rights within the state of Minnesota, as the same now exist, and its operating and other franchises within said state, all of which shall remain and continue in said St.

Paul & Sioux City Railroad Company wholly unaffected by this act, or any conveyance made, or thing done, by said railroad companies under the provisions hereof:)   *   *   *   *provided* that nothing in this act contained shall be construed as making the lands held by or in the name of the St. Paul & Sioux City Railroad Company more or less taxable than they would have been if this act had not been passed."

The conveyance was made under and pursuant to this act.   It necessarily suspended the respondent's business as a railroad company, and disabled it for all time to maintain and operate railroads; for those conveyed by it were all that at the date of the conveyance it had any authority to construct, maintain, and operate.   But it did not thereby suspend the performance of, or disable itself to perform, any other power or function vested in it; that effect was confined to its franchises, powers, and functions pertaining to constructing, maintaining, and operating railroads.   The corporation was primarily a railroad company.   It was created for that purpose, but in its charter it was granted franchises and powers not a part of, or connected with, but independent of, those necessary to enable it legally to construct, maintain, and operate railroads.   It was given power to take, hold, and dispose of the granted lands.

The act of 1881 is an express consent on the part of the state that the corporation shall suspend, dispose of, or abandon its primary or principal business.   The consent of the state may not prevent a forfeiture of the corporate franchise, where the corporation disposes of and abandons all its business and operating franchises, so that there is nothing left which it can lawfully do, and so that there can be no reason for keeping it longer in life.   Where, however, it alienates, not all, but only its principal, business, and the franchises necessary thereto, retaining all its other business, and the franchises pertaining to it, and the alienation and separation is under the express sanction of the state, is that cause of forfeiture?   We can hardly think so. It is not necessary, however, to decide the point; for the act clearly expresses an intention that the transfer (and consequent suspension) of all its railroad business shall not affect the other franchises of the corporation; "in which conveyance shall be excepted, however, and left in the St. Paul & Sioux City Railroad Company, its charter rights

v.35m—15

within the state of Minnesota, as the same now exist, and its operating and other franchises within said state, all of which shall remain and continue in said St. Paul & Sioux City Railroad Company wholly unaffected by this act, or any conveyance made, or thing done, by said railroad companies under the provisions hereof." If any cause of forfeiture accrued by reason of anything done under the act, it arose as soon as the conveyance was made,—as soon as the corporation had wholly disabled itself for all time to come to operate as a railroad company. That no cause of forfeiture should arise in consequence of the conveyance was manifestly the intent of the act; for how could it be said that the charter rights and other franchises not transferred, continued and remained in the corporation, *wholly unaffected* by the act, or any conveyance made or thing done under it, if such conveyance or thing done subjected the corporate franchise, and other franchises not transferred, to a forfeiture? The terms of the act exclude any such consequence. The proviso, also, contemplates that the corporation shall continue to exist. The provision that the act shall not be construed as making the lands held by it more or less taxable than they would have been if the act had not been passed, refers to the future,—to a future holding and future taxability. Neither cause of forfeiture is established.

Let the respondent have judgment.