STATE v. SIOUX CITY & ST. PAUL RAILWAY COMPANY.[1]

January 4, 1901.

Nos. 11,946—(217).[2]

Taxes—Lands Granted to Minnesota in Aid of Railroads.

Former decisions of this court followed, to the effect that lands are not subject to specific taxation which were granted to the territory of Minnesota under the act of congress of March 3, 1857, in aid of railroad construction, and subsequently conveyed to railroad companies accepting the provisions for the payment of a gross-earnings tax.

Retention of Lands after Sale of Road.

Held, further, the fact that defendant company transferred its franchises as to its line of road, and retained a portion of the land grant, did not operate as a sale of such lands so retained, and subject them to specific taxation.

In proceedings in the district court for Jackson county to enforce payment of taxes delinquent on real estate on the first Mon-

[1] Reported in 84 N. W. 794.     [2] October, 1899, term calendar.

day in January, 1899, the Sioux City & St. Paul Railway Company interposed an answer. The case was tried before Quinn, J., who found in favor of plaintiff, and on application of defendant certified to the supreme court certain questions for its determination. Reversed.

*W. B. Douglas*, Attorney General, and *E. T. Smith*, County Attorney, for plaintiff.

*Daniel Rohrer* and *W. P. Jewett*, for defendant.

LEWIS, J.

This is a tax proceeding to enforce the payment of certain taxes on real estate belonging to the defendant, and certain questions have been certified to this court.

The lands involved are a part of the grant by congress (act of March 3, 1857) to the territory of Minnesota to aid in the construction of railroads. The question of the validity of such taxation has been before this court upon many occasions, and there are practically no new questions involved in this proceeding. The lands having been originally granted to the Root River Valley Railroad Company, after Minnesota became a state, through foreclosure proceedings it reclaimed the ownership of such lands, and, by an act of the legislature of the state of Minnesota after the adoption of our constitution, organized the Minnesota Valley Railroad Company, and in the same act granted to such company the lands and franchises theretofore granted to the Root River Valley Railroad Company. The Minnesota Valley Railroad Company afterwards became the St. Paul & Sioux City Railroad Company, and on March 3, 1871, transferred its interest in the lands in question, and all its acquired franchises and exemptions appertaining thereto, to the Sioux City & St. Paul Railway Company. The latter company built a line of railway through Watonwan, Cottonwood, and Nobles counties, and during 1872 received title to such lands from the state, pursuant to the act of March 4, 1864, and still retains such title.

That such lands are not taxable in specie, but are embraced within the gross-earnings tax provided by the act under which the railroad companies received the grant, has often been declared

by the decisions of this court. And if there seemed to be occasion for reconsidering such question, in view of the enactment of the Anderson law (Laws 1895, c. 168), and of the decision in State v. Stearns, 72 Minn. 200, 75 N. W. 210, all doubt has been put at rest by the recent utterances of the United States supreme court in reviewing that decision.[3]

There is one question, however, which requires some consideration. It is this: Did the transfer by defendant to the St. Paul & Sioux City Railroad Company of its right of way, roadbed, and equipment, without that portion of the land grant which was retained, amount to a sale of the lands so retained? The contracts between the companies which were made in 1880 provided for a transfer to the St. Paul & Sioux City Company of all its title and franchises pertaining to the line of road then remaining to be constructed from St. James to the Iowa state line, and also all the lands granted in aid of such portion of the line, within the six-mile limit; the Sioux City Company, defendant, retaining the balance of the lands (that is, those between the six-mile and the ten-mile limit). The St. Paul Company agreed to accept the franchises and lands, and to build and equip the remaining portion of the line mentioned. These agreements were ratified by Sp. Laws 1881, c. 361, in the following language:

"That the purchases, contracts, and conveyances made in transferring the railroad and operating franchises of the Sioux City and St. Paul Railroad Company, * * * to the St. Paul and Sioux City Railroad Company, and the acts and doings of the boards of directors and of the stockholders of the said companies respectively, in relation thereto, be and the same are, all and singular hereby ratified and confirmed, and the title thereby acquired and intended to be acquired by such transfers, and each and every of the same, is in all respects legalized and made valid."

The St. Paul Company completed the line, and that company and its successor, the Chicago, St. Paul, Minneapolis & Omaha Railway Company, have ever since paid the gross-earnings tax provided by the original grant. The defendant company received deeds to that portion of the grant retained by it, and those within

[3] See 179 U. S. 223.

the six-mile limit were conveyed to the St. Paul & Sioux City Company upon completion of the line.

In our opinion, the state recognized the fact that there had been a severance of the land grant by the arrangement between the two companies, and ratified and validated such severance by Sp. Laws 1881, c. 361, and by conveying the lands accordingly. The primary object sought to be obtained by the state in passing the lands to defendant's predecessors was to secure the building of the road. That object was attained, and it was of no importance to the state whether the company actually completing the line received all of the lands, or whether the lands were divided between the companies. At any rate, the state is now foreclosed from raising the question of the validity of the transaction. The right of a railroad company to transfer its franchises as a road, and retain the lands independently of the business of operating the road, has been decided in State v. St. Paul & S. C. R. Co., 35 Minn. 222, 28 N. W. 245, where a similar validating statute was construed, and where it was held that the St. Paul Company did not forfeit its corporate franchise by discontinuing business as a railroad in consequence of having conveyed its railroad to the Chicago, St. Paul, Minneapolis & Omaha Company.

The proviso attached to chapter 361, supra, which reads as follows: "Provided, that nothing in this act contained shall be construed as making the lands held by or in the name of the different railroads, the purchase of which is hereby ratified, more or less taxable than they would have been if this act had not passed, or to diminish, augment, or in any way impair the right of the state as against said last-named companies on account of any acts heretofore done,"—affords no escape for respondent. The reference is to the future, and to a future holding and future taxability. State v. St. Paul & S. C. R. Co., supra.

For the reasons stated, the conclusion is reached that the lands in question were not taxable, and it becomes unnecessary to answer in detail the specific questions certified.

The order of the trial court is reversed, with directions to enter judgment for the defendant.