## WALLACE ET AL. *v.* CUTTEN.

No. 747. Argued April 27, 1936.—Decided May 18, 1936.

*Mr. Wendell Berge,* with whom *Solicitor General Reed, Assistant Attorney General Dickinson,* and *Mr. Leo F. Tierney,* were on the brief, for petitioners.

*Messrs. Francis X. Busch, Orville J. Taylor,* and *James J. Magner* were on the brief for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Section 6 (b) of the Grain Futures Act, September 21, 1922, c. 369, 42 Stat. 998, 1001, provides that if the Secretary of Agriculture has reason to believe that any person "is violating" any provision of the Act, or any rules and regulations made pursuant thereto, or "is attempting" to manipulate the market price of grain in violation of the provisions of the Act, the Secretary may serve upon the person a complaint stating his charge in that respect and requiring him "to show cause why an order should not be made directing that all contract markets until further notice of the said commission refuse all trading privileges thereon to such person." The commission referred to is a board "composed of the Secretary of Agriculture, the Secretary of Commerce, and the Attorney General," before whom the hearing on the complaint is had. This case is here to review a decree of the United States Circuit Court of Appeals for the Seventh Circuit which set aside an order entered by the commission under that section. Certiorari was granted on account of the novelty and importance of the question presented.

April 11, 1934, the Secretary of Agriculture caused such a complaint to be served upon Arthur W. Cutten. It recited that during the years 1930 and 1931 he was, and since had been, continuously a member of the Chicago Board of Trade; and that by its regulations made pursuant to the Grain Futures Act he was required:

"to report to the Grain Futures Administration his net position in futures owned or controlled by him, long or short, by grain and by future, when he had net open

commitments in any one future equal to or in excess of 500,000 bushels. . . ." [and also] "daily trades made by him on the Board of Trade, in futures in which he owned or controlled open commitments equal to or in excess of 500,000 bushels."

The complaint alleged further that:

"during the years 1930 and 1931 [he] conspired and colluded with various persons and grain firms of the Board of Trade to conceal his trading and position in the market from the Grain Futures Administration. In furtherance of said conspiracy, respondent made inaccurate, incorrect and false reports of his position in the market to the Grain Futures Administration, failed and refused to report accurately and correctly his position in the market and trades made by him," etc.

Then followed, in 44 numbered paragraphs, specifications of Cutten's alleged violations of the regulations and the Act on dates between March 6, 1930 and December 31, 1931.

A referee was appointed to take the evidence. The hearings before him began on May 14, 1934. Upon the opening of those proceedings, Cutten moved to quash the complaint on the ground that § 6 (b) empowered the Commission to act only against persons who are presently committing offences; and that consequently, it had no authority to deny to him trading privileges for violations committed more than two years prior to the institution of the proceedings against him. The referee, without passing upon the motion to quash, proceeded to take the evidence; the hearings before him were concluded May 24, 1934; then the commission heard the complaint on briefs and oral argument; and before it the motion to quash was renewed. On February 12, 1935, the commission overruled the motion; made findings of fact on the evidence; concluded that Cutten's conduct "constitutes a violation of the Grain Futures Act,

and the Rules and Regulations made pursuant thereto"; and ordered that "all contract markets refuse all trading privileges thereon to Arthur W. Cutten for a period of two years from March 1, 1935."

This suit was brought to set aside that order. The Circuit Court of Appeals held that the power conferred by § 6 (b) is remedial, not punitive; that it is limited to suspending a trader who "is violating any of the provisions of this Act, or is attempting to manipulate the market price of any grain," in other words, one who is presently committing an offence; that at the time of the filing of the complaint there was no wrong existing to be remedied, the latest wrongdoing complained of having occurred more than two years before the filing of the complaint by the Secretary of Agriculture; that, therefore, the commission was without authority to entertain the complaint, and should have granted the motion to quash. 80 F. (2d) 140.

The Government argues that, since violations of the reporting requirements by their very nature cannot be detected during the course of commission, the literal construction thus given to § 6 (b) renders it impractical and ineffective as a means of dealing with those persons who violate any of the provisions of the Act or attempt to manipulate the market price of grain. Incidents in the history of the legislation are cited to support the Government's contention. In reply, it is argued that ample remedy is afforded by other provisions of the Act; that these confer broad power over boards of trade; and that the boards of trade may control their own members. It is urged that for the construction given to § 6 (b) by the lower court support may be found in the different language employed in § 6 (a). For it authorizes the commission to suspend "or to revoke the designation of a board of trade as a 'contract market' upon a showing that such board of trade has failed or is failing to comply"

with the requirements prescribed. Attention is also called to the penalty provisions of § 9.

It would be inappropriate for us to discuss these, and other, arguments presented. The language of § 6 (b) is clear; and on the face of the statute, there can be no doubt concerning the intention of Congress. As was said in *Iselin* v. *United States,* 270 U. S. 245, 250–251: "The statute was evidently drawn with care. Its language is plain and unambiguous. What the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably [possibly] by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." *A fortiori,* it may not be done for the purpose of making punishable action which, on the face of the statute, is merely to be prevented. Compare *United States* v. *Weitzel,* 246 U. S. 533, 542–543.

*Affirmed.*