## SECURITIES AND EXCHANGE COMMISSION v. OTIS & CO.
### No. 5433.

District Court, N. D. Ohio, E. D.
Dec. 28, 1936.

John J. Burns and James J. Caffrey, both of Washington, D. C., for the Commission.

Richard Inglis and F. X. Cull (of Bulkley, Hauxhurst, Inglis & Sharp), both of Cleveland, Ohio, for defendant.

WEST, District Judge.

The first question for determination is whether on April 1, 1936, when the bill was filed, defendant was about to engage in acts or practices in violation either of section 9(a) (2), Securities Exchange Act of 1934 (15 U.S.C.A. § 78i(a) (2), or of section 17(a) (2), Securities Act of 1933 as amended (15 U.S.C.A. § 77q(a) (2). For it appears that at that time all stock of the Murray-Ohio Company purchased or secured by defendant, which is the subject matter of complaint, had been sold and disposed of by it, and plaintiff was aware of that fact.

The statutes which authorize the bill are section 20(b) of the Act of 1933 (15 U.S.C.A. § 77t(b), and section 21(e) of the Act of 1934 (15 U.S.C.A. § 78u(e), under which the Commission may sue for injunction when it shall appear that any person is engaged or about to engage in the prohibited acts or practices.

The answer avers defendant's purpose to co-operate with plaintiff and act upon the Commission's interpretation of the law in future dealings, until the courts have settled disputed questions, so far at least as section 9(a) (2) of the Act of 1934 (15 U.S.C.A. § 78i(a) (2) is concerned; but omits to state its purpose re-

specting section 17(a) (2) of the Act of 1933 (15 U.S.C.A. § 77q(a) (2).

I might be disposed to accept this assertion as a sufficient defense if I believed the result of future violations of the law would be as serious as defendant claims. Under section 15(a) of the Act of 1934, as amended (15 U.S.C.A. § 78o(a), no unregistered broker or dealer such as the defendant is may use the mails or facilities of interstate commerce in the purchase or sale of securities not exempt; and under section 15(b), as amended (15 U.S.C.A. § 78o(b), "the Commission shall, after appropriate notice and opportunity for hearing, by order deny registration to or revoke the registration of any broker or dealer if it finds that such denial or revocation is in the public interest and that (1) such broker or dealer * * .* (C) is permanently or temporarily enjoined by order, judgment, or decree of any court of competent jurisdiction from engaging in or continuing any conduct or practice in connection with the purchase or sale of any security."

This punishment is so severe that, were it certain to follow future violations, the court would be disposed to think that no reputable and extensive concern such as defendant would intentionally risk the danger.

But, assuming defendant to have been enjoined from future illegal practices and to be obeying the injunction, no possible reason occurs to the court why the Commission or any court could consider revocation of its registration to be in the public interest. It might be otherwise if the offenses charged against defendant were of a character to stamp it at once as a menace to the investing public, instead of being of a highly technical type.

Consequently, as the bill charges that defendant has committed acts which violate the two sections in question, and defendant asserts that whatever it did was not unlawful, plaintiff, on the authorities cited in its brief, is entitled to an injunction, provided the evidence warrants. If in fact defendant has no intention of again offending, it will not be injured by an injunction.

Wallace v. Cutten, 298 U.S. 229, 56 S. Ct. 753, 80 L.Ed. 1157, on which defendant relies, is not applicable, for it related to jurisdiction of a special tribunal to make an order, and not to a court's right to grant equitable relief upon proper application and showing. See section 20(b) Act of 1933 (15 U.S.C.A. § 77t(b), and section 21(e) Act of 1934 (15 U.S.C.A. § 78u(e).

■ I think the evidence is insufficient to establish with the necessary degree of certainty to warrant an injunction the claim that defendant contemplates any future violation of section 9(a) (2) of the Securities and Exchange Act of 1934 (15 U.S.C. A. § 78i(a) (2), which reads:

"It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange— * * *

"(2) To effect, alone or with one or more other persons, a series of transactions in any security registered on a national securities exchange creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others."

The parties admit that defendant's purpose constitutes the gist of the matter. It is an extensive dealer in securities, and claims that its only purpose in acquiring the block of 4,918 shares of the Murray-Ohio Company in connection with which it took agreements from the vendors that for 60 days they would withhold the balance of their shares from the market, and of its other market activities in the stock, was to secure and dispose of an attractive investment to its customers in the usual course of its business. Plaintiff avers that defendant's real purpose was to induce the purchase or sale of the stock in question, and that in fact defendant manipulated the market to carry out its plans.

It must be admitted that the evidence on the point is close. Considering the uncontradicted testimony that withholding agreements have heretofore been regarded as necessary and proper in such situations, in order to protect an honest broker undertaking to effect the disposal of a good sized block of stock, I am unwilling to attribute to these agreements the sinister purpose which plaintiff claims for them, even though they of course operated to temporarily maintain the price of the stock. Nor do I think it fatal to the defense that, after an understanding was reached with Mr. Bernet that, should he

sell his holdings, he would dispose of them through defendant, and after he had died and it was discovered that his family had placed a large amount of his stock on the market, defendant sent word to the son of his father's agreement, and thus secured the withdrawal of 565 shares of the Bernet stock remaining unsold. This was but carrying out a previous understanding similar to a withholding agreement. While plaintiff claims that defendant's omission to buy this stock when it was on the market conclusively shows that defendant was not purchasing solely for its own inventory, I do not think that necessarily follows. Defendant had no agreement to buy this stock at any particular time or price. It may have had lawful reasons for not desiring to purchase it at the first moment it was available.

Defendant's brief sets out the negative evidence in respect to the alleged violation of section 9(a) (2) of the Act of 1934 (15 U.S.C.A. § 78i(a) (2) in considerable detail. Many things might have been done, and generally are done, by dealers desiring to influence others to purchase stock through manipulated prices, but all these were omitted here. The lack of such indicia lends considerable strength to defendant's position.

The court is further unable to agree with plaintiff's contention that there is any evidence whatsoever that the underwriting mentioned in the pleadings was the result of any plan having as part of its purpose an illegal disposition of stock by the defendant. As to this section plaintiff does not make a case and injunction is denied.

When we come to the charge that section 17(a) (2) of the Securities Act of 1933, as amended (15 U.S.C.A. § 77q(a) (2), has been violated and defendant should be enjoined from its future infraction, the situation is different. That section makes it "unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly— * * *

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

I think the evidence fairly supports plaintiff's claim with respect to this matter. Defendant admits that no disclosure of the withholding agreements or of its own activities in the stock market in reference to Murray-Ohio stock was made to its customers. In fact, it appears that its salesmen did not themselves know of these facts. Yet they were instructed to offer the stock "at the market," as appears by the circulars which are in evidence. I agree with counsel for plaintiff that these references to market price and current price levels could refer only to stock exchange quotations and that these imply "a price standard which normally reflects the operation of a free and open market in the sale and purchase of securities." And that the defendant's customers by such omission to state the facts respecting withholding agreements and the market price situation were led to believe that they were paying a price established in the normal way on the stock exchange without having been affected by artificial restriction of supply, and without stimulation of demand substantially by the defendant alone. The withholding agreements kept 17,000 out of 60,000 shares off the market while defendant was disposing of its approximately 5,000 shares. This in itself was a material fact which I think the law requires shall be communicated to defendant's customers. Plaintiff claims a much larger proportion of shares was withheld; I have some doubt as to whether some 42 per cent. of the stock was really withheld; but regard the exact proportion unimportant in view of the undoubted withholding of the above amount.

Plaintiff further claims that the underwriting plan contemplated sale of the stock in question off the exchange at prices established on the exchange by transactions which may be effected by the defendant in such a way as to affect the market price of the stock. This underwriting has all been concluded, and all the stock underwritten was disposed of before the bill was filed, and no further underwriting is in contemplation. This is sufficient reason to deny injunction as to this feature. But it should be further said that prior to registration defendant's counsel took up with the Commission the subject of stabilization mentioned in section 9(a) (2) of the Act of 1934 (15 U.S.C.A. § 78 i(a) (2) and advised the Commission that the defendant expected to purchase and sell Murray-Ohio stock as well as debentures for stabilizing

the market, and that these transactions might affect the market price of the shares. He wished to incorporate such a statement in the registration certificate, inquired if the language he proposed would be satisfactory, and was advised that the Commission had no objection, and it was done.

This court is not prepared to say that these so-called stabilizing transactions, if they ever did or will take place, violate the law. Transactions to stabilize prices are illegal if in contravention of rules and regulations prescribed by the Commission under section 9(a) (6), 15 U.S.C.A. § 78i (a) (6). No regulations having been prescribed, these proposed transactions contravene none. The section recognizes that stabilization may be "necessary or appropriate in the public interest or for the protection of investors," and nothing in this record proves that the method suggested by defendant is either improper or illegal.

I think plaintiff is entitled to relief of the limited scope indicated herein, and a decree may be entered accordingly at defendant's costs.