## SECURITIES AND EXCHANGE COMMISSION v. LAWSON.

### No. 2556.

District Court, D. Maryland.

Aug. 19, 1938.

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., and Charles D. Lane, Gen. Counsel, Robert E. Kline, Jr., Asst. Gen. Counsel, William M. Malone, and Christopher M. Jenks, all of Washington, D. C., for plaintiff.

Weinberg, Sweeten & Green, of Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the Securities and Exchange Commission filed its bill of complaint against the defendant, William P. Lawson, on July 30, 1938, to enjoin certain alleged illegal practices prohibited by the provisions of section 17(a) (1), (2) and (3) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a) (1–3), and section 8, par. (b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78h (b). On the same day an order was signed requiring the defendant, after notice, to show cause why the preliminary injunction as prayed should not be issued; and setting for hearing the Commission's application for the injunction on August 15, 1938. Pursuant thereto when the case came on for hearing on August 15th, the defendant filed

a paper entitled "A motion to dismiss" but in substance being a brief answer to the order to show cause setting up as the sole point of opposition to the issuance of the injunction that the defendant "is no longer engaged in or carrying on the business of broker and dealer in securities, that he has liquidated and discontinued the business formerly conducted by him under the trade name and style of William P. Lawson & Company, and that it is not his intention of reentering or reengaging in the business of brokerage or dealing in securities; that he is not now engaging, nor has he any intention of ever engaging, in any of the acts sought to be enjoined by the prayer for relief."

At the hearing testimony was submitted for the Commission in general supporting the facts alleged in the bill of complaint; and the defendant offered testimony in support of its answer. While only the application for a preliminary injunction had been set for hearing, at the conclusion of the testimony, counsel for both parties agreed that the case should be submitted for final decree on the testimony taken.

Section 17(a) (1), (2) and (3) of the Securities Act of 1933, section 79q(a) (1), (2), (3), Title 15 U.S.C.A., provides as follows:

"77q. Fraudulent interstate transactions

"(a) It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

Section 8(b) of the Securities and Exchange Act of 1934, section 78h(b) of 15 U.S.C.A., provides that,

"78h. Restrictions on borrowing by members, brokers, and dealers

"It shall be unlawful for any member of a national securities exchange, or any broker or dealer who transacts a business in securities through the medium of any such member, directly or indirectly— * * *

"(b) To permit in the ordinary course of business as a broker his aggregate indebtedness to all other persons, including customers' credit balances * * * to exceed such percentage of the net capital * * * employed in the business, but not exceeding in any case 2,000 per centum, as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors."

From the pleadings and testimony in the case and in accordance with the requirements of Equity Rule 70½, 28 U.S.C.A. following section 723, I make the following—

Findings of Fact.

I. At all times herein mentioned the defendant William P. Lawson was and now is an inhabitant and resident of the City of Baltimore, within the District of Maryland.

II. From on or about December 1, 1937 to and including the time of the commencement of this suit, the defendant in the sale of securities by the use of means and instruments of transportation and communication in interstate commerce and by the use of the mails, directly and indirectly engaged in transactions, practices and courses of business which operated as a fraud and deceit upon the purchasers in that he (a) solicited and accepted orders for the sale of securities to his customers as principal and offers to buy securities for his customers as agent and in connection therewith intended to and did receive and accept for safekeeping securities belonging to such customers for which such customers had paid in full and, without the knowledge of such customers, convert such securities to his own use and benefit; (b) solicited and accepted orders for the sale of securities to his customers as principal and offers to buy securities for his customers as agent and in connection therewith intended to and did receive and accept monies to be held for such customers as free credit balances and without the knowledge of such customers convert such monies to his own use and benefit; (c) solicited and accepted orders for the sale of securities to his customers as principal and offers to buy securities for

his customers as agent and in connection therewith intended to and did receive and accept securities as collateral for balances due from such customers on margin accounts and without the knowledge of such customers sold said securities for more than the balances due from such customers and convert the proceeds thereof to his own use and benefit.

III. From on or about December 1, 1937 to on or about July 30, 1938, the defendant transacted business in securities as a broker and dealer within the meaning of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., through the medium of a member of a national securities exchange, and permitted in the ordinary course of his business as a broker his aggregate indebtedness to all other persons, including customers' credit balances (but excluding indebtedness secured by exempted securities) to exceed two thousand per centum of the net capital employed in the business in that the defendant was insolvent. From July 30, 1938 to August 13, 1938, the defendant's continuation of his business was in the course of closing it out only.

IV. At the time of the commencement of this action the defendant owed his customers a net amount of approximately $91,-753.18 in money and securities, of which amount $78,716.38 represented customers' securities which had been sold by the defendant, and which should have been in the defendant's possesssion for delivery to the customers, but were not in his possession or under his control; and $13,036.80 represented customers' free cash credit balances not available for them. Since then the defendant has liquidated his business as broker and dealer and has secured releases from his customers by delivering to them money and securities representing approximately one-third of his indebtedness to customers, and personal promissory notes representing the remaining two-thirds of such indebtedness, some of which are secured. The defendant between July 30 and August 13, 1938 has completely closed out his stock brokerage and securities business, has dismissed all his employes, terminated his office lease, and given up all facilities for conduct of the business; and has given notice to the public to that effect. It is not his present intention to resume such business and there is no likelihood that he will do so.

On these facts the CONCLUSIONS OF LAW are:

I. That the Court has jurisdiction of the parties and of the subject matter of this action.

II. That at the time of the commencement of this action the defendant was engaged in acts and practices which constituted violations of Section 17(a) (3) of the Securities Act of 1933.

III. That at the time of the commencement of this action the defendant was engaged in acts and practices which constituted violations of section 8(b) of the Securities Exchange Act of 1934.

IV. That the plaintiff is entitled to a final decree enjoining and restraining the defendant from the acts and practices constituting violations of section 17(a) (3) of the Securities Act of 1933 and section 8(b) of the Securities Exchange Act of 1934 set forth in the foregoing findings of fact or acts and practices of similar purport or object.

From the above facts it is clear enough, and indeed it is not disputed by counsel, that the defendant over a period of eight months has engaged in a course of business which operated as a fraud upon purchasers of securities through him and thus has violated section 77q(a) (3). Counsel for the Commission also contends that subparagraphs (1) and (2) of the same section have likewise been violated, but the latter is a doubtful legal contention. The defendant did not employ any particular device, scheme or artifice to defraud; or make untrue statements of material facts or omission to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading. What he did from time to time was to sell securities of some of his customers which he had purchased for them (and for which they had in many cases fully paid) or which he was otherwise holding for their accounts not in default, without due authority, and to keep them in ignorance of the fact that he had done so; and to convert the proceeds of the sale of the securities to his own use, while he was insolvent. This he did from time to time over a period of eight months with respect to the securities of numerous customers. At the time of filing the bill of complaint, he had sold or hypothecated securities of his customers and was short on securities which he should have had in his possession for delivery to them to the amount in value of $78,716.38. The proof

shows that in one or more instances, after the securities had been sold, the customer was required to deposit further sums of money as margin on his account, and in one or more instances dividends were forwarded as having been paid on securities which had previously been sold. It is arguable that the obtaining of the margin deposits constituted a violation of 77q(a) (2), but the great majority of the illegal practices fall only under subsection (3) of 77q (a).

It is also clear enough that the Commission has shown a violation of section 78h (b); as the defendant was insolvent and could not properly have continued in business under that section.

As to the issuance of an injunction under the Securities Act and the Securities Exchange Act, the former in section 20(b), 15 U.S.C.A. § 77t(b), and the latter in section 21(e), 15 U.S.C.A., § 78u(e) provides:

"Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, it may in its discretion, bring an action in any district court of the United States, * * * to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond."

As the proof shows that the defendant was engaged in the same general course of business for some months up to the time of filing the bill of complaint, or a very few days theretofore, it is apparent that on the state of facts then existing the Commission was entitled to a preliminary injunction. It is not seriously disputed by defendant's counsel that this is so on the state of facts then existing, but the contention is strongly urged upon the court that by reason of the entire discontinuance of the defendant's business thereafter and immediately prior to the hearing on August 15, 1938, there is now no further need or necessity for the issuance of the injunction because the illegal practices complained of have been discontinued and it is urged that there is no likelihood that they will ever be resumed. The defendant here points specifically to the finding of fact that he had in the meantime wound up his business, settled with all the customers by payments of cash and delivery of securities or giving them secured or un-secured promissory notes; had discharged all his employes, terminated his brokerage wire connections, discontinued his office in Baltimore City and wholly retired from the stock brokerage business. The question thus presented is whether the discontinuance and termination thereof subsequent to the filing of the bill of complaint, and due to its filing, disentitles the plaintiff to the injunction. The defendant's contention is that by the well established rules of equity jurisprudence an injunction will generally not be issued where a wrongful act or practice has been definitely discontinued with no likelihood of repetition.

On the other hand, plaintiff's contention here is that it is entitled to an injunction despite the defendant's complete retirement from business under the express wording of the statute which predicates the right to the injunction on the sole condition that the defendant "is engaged * * * in any acts or practices which constitute * * * the violation of the provisions" of the statute.

There seems to have been but one case heretofore decided which directly involves this particular question. In Securities and Exchange Commission v. Torr, 2 Cir., 87 F.2d 446, the defendant had been enjoined preliminarily by the district court from an illegal practice under these Acts. The particular transaction involved was an alleged violation of section 17(a) of the Securities Act and section 9(a) (2) of the Securities and Exchange Act, 15 U.S.C.A. §§ 77q (a), 78i(a) (2). It involved an improper stimulation of the market for the sale of a particular corporate stock. There was "evidence that such acts were committed only after steps had been taken which gave reasonable ground to believe that they did not run counter to the interpretation of the law by the plaintiff itself with the fact that, when it appeared that the plaintiff did not approve, the practices were discontinued before this suit was started" (page 449).

The Circuit Court of Appeals reversed the issuance of a preliminary injunction (Circuit Judge Learned Hand dissenting) on this ground, saying (at page 449):

"Ordinarily, it is no sufficient answer to a motion for an injunction that the improper conduct repeated in the past has been discontinued when action to impose legal restraint is known or thought to be in the offing, Goshen Mfg. Co. v. Hubert A. Myers Mfg. Co., 242 U.S. 202, 37 S.Ct. 105, 61 L.Ed. 248; Swift & Co. v. United States,

276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587; Local 167 International Brotherhood of Teamsters v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804, for the likelihood of a resumption of the acts is a continuing menace. But, when such a likelihood does not in reason exist, justification for such drastic action as the issuance of a preliminary injunction is lacking, since there is in fact no lawful purpose to be served. * * *

"As the issuance of an injunction in cases of this nature has statutory sanction, it is of no moment that the plaintiff has failed to show threatened irreparable injury or the like, for it would be enough if the statutory conditions for injunctive relief were made to appear. Securities & Exchange Comm. v. Jones (C.C.A.) 85 F.2d 17. But, when such statutory prerequisites are alone relied on, the unambiguous language of the statute is to be given its effect. Cutten v. Wallace (C.C.A.) 80 F.2d 140. That language in this instance conditions the right upon sufficient proof that 'any person is engaged or about to engage in any acts, or practices which constitute or will constitute a violation' of the statute.

"As the appellants were not engaging in any such acts or practices and the circumstances fail to support any reasonable inference that they were about to engage in any at the time the suit was brought or at the time the injunction was made effective, we are constrained to hold that it was improvidently granted. See Cutten v. Wallace, supra."

The same case again came up on final hearing in the district court after additional proof, and by final decree a perpetual injunction was ordered to be issued by District Judge Woolsey on the finding that the illegal practices had continued up to and shortly beyond the filing of the bill, the District Judge saying in his opinion (Securities and Exchange Comm. v. Torr, D.C., 22 F.Supp. 602, 609):

"So if the defendants were engaged in unlawful practices when the Commission began its suit the statutory injunction should issue."

In Securities and Exchange Comm. v. Otis & Co., D.C., 18 F.Supp. 100, 102 (said now to be on appeal in the Sixth Circuit) District Judge West declined to issue an injunction against a particular underwriting plan where it had already been concluded and the stock underwritten was disposed of before the bill was filed and no further underwriting was in contemplation, saying:

"This is sufficient reason to deny injunction as to this feature."

That the plaintiff here is entitled to the injunction seems to be within the principle laid down in the Second Circuit in the Torr Case, which establishes as the test whether the illegal practices had continued up to the time of the filing of the suit. The last unauthorized sale of a customer's security specifically shown in the evidence seems to have been a few days before the investigation by the Commission of the defendant's books on July 21, 1938; but there is nothing in the evidence to show that there was any definite or deliberate abandonment by the defendant of his general course of business in this respect prior to the filing of the bill on July 30th; and it is clear that the business was continued until or after the filing of the bill contrary to the provisions of 15 U.S.C.A. § 78h(b).

Counsel for the defendant has cited numerous cases, illustrating general principles of equity with respect to the issuance of injunctions, to the effect that they will not be issued where a particular isolated transaction has been entirely consummated or terminated before the institution of the suit, or where, by reason of the subject matter, the issuance of an injunction would be futile or entirely unnecessary or the case has become moot, or where the circumstances are such that the chancellor is entirely convinced from the proof there is no likelihood of repetition. I have examined the cases and reviewed generally the applicable principles of equity, but I am not persuaded that such cases are controlling here. Illustrative cases are Bracken v. Securities & Exchange Comm. 299 U.S. 504, 57 S.Ct. 18, 81 L.Ed. 374; Lewis Pub. Co. v. Wyman, 228 U.S. 610, 33 S.Ct. 599, 57 L.Ed. 989; Public Service Comm. v. Telephone Co., 147 Md. 279, 128 A. 39; Rosenthal v. Shepard Broadcasting Service, Mass., 12 N.E.2d 819, 114 A.L.R. 1502 (where the cause had become moot); United States v. U. S. Steel Corp., 251 U.S. 417, 444, 40 S.Ct. 293, 296, 64 L.Ed. 343, 8 A.L.R. 1121; Brookings State Bank v. Federal Reserve Bank, D.C., 281 F. 222 (where the practice complained of had ceased before the suit was filed); Securities and Exchange Comm. v. Otis & Co., D.C., 18 F.Supp. 100, and Withington v. Roberts & Co., D.C., 22 F.Supp. 460 (where the act had been consummated, and the injunction would have been futile);

and see generally 32 C.J. 75, 76, 359. Many of them involve only litigation between individuals relating to personal property or individual rights where the interest of the public was not directly concerned. But here we are dealing with recent Acts of Congress establishing an important policy for the protection of the public in the sale and purchase of securities. Not only the language of the statute but the fundamental purposes of the Acts can only be gratified by a definite decree of the court which adjudicates the illegality of the practice in the past and enjoins the defendant from repetition thereof in the future. Injunction in such matters is evidently an important feature of the legislation for the protection of the public in the future. It is not necessary to hold in this case that the language of the statute mandatorily and inflexibly requires that an injunction must issue in every case where there is any illegal practice, however trivial, existing at the time of filing of the bill, irrespective of the general principles of equity with regard to injunctions, and where no substantial object is to be achieved in furtherance of the purposes of the Acts. I am not disposed to think that it was the intention of Congress to withdraw all discretion from the district judge, or to require the issuance of an injunction where not consistent with the general principles of equity, and where no real purpose of the Acts would be thereby subserved. Seemingly to the contrary it is provided in the statute that the injunction shall issue "upon a proper showing". But however that may be, such a proper showing has been made in this case. There is a further reason why the bill for the injunction should not be dismissed if the plaintiff was entitled thereto on the facts existing at the time of its filing. Under the provisions of section 15(b) of the 1934 Act, 15 U.S.C.A. § 78o(b), the injunction in this case may be the basis for further administrative action by the Commission with respect to the defendant's registration as a broker. Of course the injunction should not issue for this reason unless the plaintiff is otherwise entitled to it; but if the plaintiff is so entitled its rights in this respect ought not to be defeated by the mere cessation of the illegal practice by the defendant after the filing of the bill.

I am satisfied from the proof that the defendant has actually wound up his present business and in good faith has no present intention of ever resuming it. It is also creditable to him that in closing his business he has apparently expressly recognized in full his obligations to his customers and has apparently applied fully his own present means, and substantial sums borrowed from friends, to satisfy their claims at least in part, and has in writing promised full payment in the future; and the court sees no reason to doubt the entire bona fides of this expressed intention. But the test as to whether an injunction should issue is not whether the defendant has discontinued the illegal practices subsequent to the filing of the bill and made restitution within his present ability to his customers, but whether in the public interest the plaintiff on the proof is entitled to the issuance of the injunction; and the plaintiff is not obliged to accept the defendant's statement that he will not resume his business, as there is no legal obstacle to his doing so, however clear his present intention may be to the contrary.

In numerous equity cases it has been held that the defendant's abandonment of the actions sought to be enjoined *subsequent* to the filing of the suit, will not bar the issuance of the injunction. United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 308, 17 S.Ct. 540, 41 L.Ed. 1007; Vick Medicine Co. v. Vick Chemical Co., 5 Cir., 11 F.2d 33; Vaughan v. Winston Co., 10 Cir., 83 F.2d 370; Andrew Jergens Co. v. Bonded Products Corp., D.C., 13 F.2d 417, modified 2 Cir., 21 F.2d 419; United States v. Workingmens' Amalgamated Council of New Orleans, C.C., 54 F. 994, 26 L.R.A. 158; Mobile Gas Co. v. Patterson, D.C., 288 F. 890.

For these reasons I have concluded that a decree should be signed in usual form (but without allowance of costs to either party, as the statute so provides) for a perpetual injunction against the defendant to enjoin the illegal practices complained of. After agreement as to the form of decree, counsel may submit it for signature.