**WILEMON et al. v. BROWN, Price Adm'r, et al.**

**Civ. No. 884.**

District Court, N. D. Texas, Dallas Division.

Sept. 29, 1943.

Howard Dailey, of Dallas, Tex., for plaintiffs.

Fleming James, Jr., and Lowell J. Grady, both of Washington, D. C., and Amos Coffman and William B. Harrell, both of Dallas, Tex., for defendants.

ATWELL, District Judge.

The plaintiffs seek to restrain the enforcement of an order wherein they are "suspended, restrained and enjoined from selling, transferring or dealing in gasoline for a period of two weeks, * * *." They claim they do a large volume of business as retailers of automobile necessities, buying their product from refiners and selling at retail to consumers who drive into their stations.

That on May 1, 1943, they were served with an order charging them with having violated certain provisions of Ration Order 5 C issued by the Administrator of the O. P. A. That there were four distinct violations alleged, the fourth of which was that on April 8, 1943, they had in their possession 1063 No. 6 Class A ration coupons which they had accepted in exchange for gasoline prior to the effective date of such coupons. That upon a hearing held in accordance with the regulations made by said Administrator, they were absolved from three of the charges, but were found guilty of "having in their possession the coupons

mentioned which they had accepted in exchange for gasoline prior to the effective date. That they had not willfully violated this provision, but they had been guilty of gross negligence and carelessness, warranting a severe penalty." He also held that they were "suspended, restrained and enjoined from selling, transferring or dealing in gasoline for a period of two weeks."

From that order the plaintiffs appealed to the "Hearing Administrator" at Washington, D. C., who held that the order should be enforced against them to begin at 12:01 A. M., August 8, 1943, and to end at 12:01 A. M., August 23rd. They plead facts showing damages in excess of $3,000, as a result of that order, if it is permitted to stand.

The order was stayed pending the trial on the merits of this suit wherein preliminary restraining orders were waived. Upon the trial the facts were stipulated. This stipulation fixes their damage at approximately $10,000. Testimony accompanying the stipulation shows that a Mrs. Wolfe, an employee of the plaintiffs, telephoned the O. P. A. Dallas office and asked about coupons that had been improvidently taken before they were valid. She claims that a woman, who answered the phone, told her that she could hold the coupons and turn them in to the refinery after they became valid.

The authority of any employee in the O. P. A. office to make such a statement is denied by the superintendent. It must be assumed, however, that something of that sort transpired, because the "Hearing Administrator" declared that the holding and taking of the coupons was not willful. The record also discloses that in the early days of allocation that procedure may have been indulged in by some dealers.

The plaintiffs claim that their Constitutional rights have been invaded in that there was no sufficient delegation of authority from the Congress to the President, nor by the President on down through the line of delegation, for the imposition of such an order. That it was, and is, an attempt to set up a court and to take their property without due process. Appropriate sections of the Constitution are plead.

Ration Order 5 C is labeled, "Mileage Rationing; Gasoline Regulations." It became effective on December 1, 1942. 7 F.R. 9787. It provides: "Any person who violates this Ration Order No. 5 C may, by

administrative suspension order, be prohibited from receiving any transfers or deliveries of, or selling or using or otherwise disposing of, any gasoline or other rationed product, or facility. Such suspension order shall be issued for such period as in the judgment of the Administrator, or such person as he may designate for such purpose, is necessary or appropriate in the public interest and to promote the national security."

The pedigree of that order is Sec. 2(a), Act June 28, 1940, 54 Stat. 676, as amended by Act May 31, 1941, 55 Stat. 236, entitled, "Priorities and Allocations Act," and by Title III of the Second War Powers Act, 1942, March 27th, 56 Stat. 176, 50 U.S.C.A. Appendix, § 633.

On February 6, 1943, the Administrator issued Procedural Regulation No. 4, effective March 1, 1943, which provided for a hearing before a "Hearing Administrator" and for suspension decrees. 8 F.R. 1744, 2035.

If there was authority for the procedural order, it sufficiently guarded the safety and rights of the plaintiffs.

Only those coupons are valid from consumer to dealer which so show on their face, and gasoline may not be transferred for any other than valid coupons. The 1,063 coupons represented an aggregate of 4,252 gallons. They were accepted six weeks before they were valid.

There is no question of the plaintiffs' right to enter court. They have pursued to a finality their Administrative remedy. Nor is there any doubt that the Congress validly gave the President the authority to allocate any material or facilities for defense "upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense." The Congress also authorized the President to exercise "any power, authority, or discretion conferred on him by this section, through such department, agency or officer of the government as he may direct, and in conformity with any rules and regulations which he may prescribe."

On September 8, 1939, the President had issued a declaration that a national emergency existed, and there followed the executive decree formulating and appointing the bureaus and executive officers, through which the various steps of this proceeding were carried. It must be conceded that

the power of allocation is validly entrusted to the Executive.

The defendants claim, and their claim seems well taken, that at the time of the passage of the Second War Powers Act, which re-enacted Sec. 2(a) of the Priorities and Allocation Act in Title III, the Congress knew that the Boards had been claiming the power to, and, in fact, had been issuing suspension orders against dealers whom they claimed had violated the rationing regulations. Senate Report 989, 77th Congress, Second Session; 88th Congress Record February 24, 1942, page 1634. The Attorney General sought and secured criminal remedies, claiming that Administrative suspensions, although highly important, did not provide a proper penalty in every case.

Without stopping to cite pertinent authorities, we, therefore, have a situation which indicates validity in the entire procedure, with the exception of the right of the "Hearing Administrator" to fix a penalty such as was here imposed.

If we consider the breadth and scope of the order entered against the plaintiffs, we find considerable difficulty in concluding that it is "merely remedial." It is not the legitimate outgrowth of the right to allocate, or to ration. It borders on a confiscation of the plaintiffs' business for two weeks. It destroys that business for that period. Both employees and customers are, and necessarily will be, demoralized. The loss will be heavy.

The facts show that there is no dispute about the possession of these inappropriate coupons. If gasoline had been exchanged for them, then that product had already left the stream which would supply the nation's needs. There is no charge that the coupons were to be, or were, in fact, used for another transfer. The damage, if damage there was, had already been done. When the valid date for the use of such coupons arrived, they were passed on by the plaintiffs and used in the replenishing of their tanks.

One always feels the poverty of words when it comes to defining the simple. This case really must be ruled by deciding whether this order was remedial or punitive.

The Supreme Court in Wallace v. Cutten, 298 U.S. 229, 56 S.Ct. 753, 80 L.Ed. 1157, quite briefly, and quite in point, de-

nied an Administrative body similar punitive power. See also United States v. La-Franca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551; O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980; Simon Hardware Company v. Nelson, 52 F.Supp. 474, District Court of Columbia, decided September 17, 1943.

The Congress did not vest in the defendants such a power as is here exhibited. If it did, it presumed to act improperly, which presumption will not be indulged. We must find that it acted constitutionally, if possible, and lay the blame where it belongs, to-wit, on the "Board."

Remedial cases are such as afford summary adjustment through extraordinary writs, such as prohibition, mandamus, certiorari and quo warranto. State v. St. Paul & S. C. R. Co. 35 Minn. 222, 28 N.W. 245; 36 Words and Phrases, Perm.Ed., page 822. Punitive is punishment for past wrongdoing, as well as to deter the defendant and others in a similar business from repeating such wrongdoing in the future. Oliver v. Columbia, N. & L. R. Co., 65 S.C. 1, 43 S.E. 307. It is not thought that an order, carrying results such as this one, can be said to be anything other than a penalty—than punitive. The wages of transgression are the loss of business—the loss of money—the loss of actual property rights. Penalty is defined as a punishment imposed for a violation of a rule or a law. A painful consequence or any disadvantage attached to some procedure, as a penalty for carelessness. A disadvantage imposed upon a competitor for an infraction of the rules.

The "Hearing Administrator," unknown to and unprovided for by the Congress, presumes to conduct a court. Procedure is prescribed by his superior for such conducting. He enters a judgment concerning which there is no limit fixed. No maximum. No minimum. He acts without any fear of consequences for malfeasance, or misfeasance. If he can suspend for two weeks, he can suspend for two years. He is not only unknown to the Congress, but he is unknown to the Constitution. Art. 3, Sec. 1, vests such power in one Supreme court, and in such inferior courts as Congress may from time to time ordain and establish. The judges hold during good behavior, and receive a stated compensation. They must be appointed by the President

982

and confirmed by the Senate. They may be impeached.

What the "Hearing Administrator" does is beyond the reach of Executive forgiveness. He, himself, is beyond the reach of any Constitutional removing power. He is a modern instance of pure dictatorship.

Sec. 2 of the same Article vests this sort of power in all cases arising under the Constitution. This is a case that arises directly under the Constitution because of the declaration of war and the following of that declaration by the passing of the statutes out of which grow the delegations of authority for allocation. As a result of such delegation of authority, there was conceived and born a "Hearing Administrator" who is and was without Constitutional father or mother. No attempt at baptism in the waters of conflict can change his parentage and make it legitimate.

This view of a penalty, or punishment, is sustained by a further reading of the Allocation Act, which provides for the criminal punishment of the citizen who violates its provisions, and also for equitable restraints, both of which take place in named courts.

Even the gasoline which was legally acquired, may not be sold for two weeks. The business is closed. The same contention was made by the Administrator in Wallace v. Cutten, supra, that is made here. The Commission claimed that in depriving Cutten of the right to trade for a period that they acted remedially and not punitively.

An unanimous court, speaking through Mr. Justice Brandeis, said that [298 U.S. 229, 56 S.Ct. 754, 80 L.Ed. 1157]: " 'What the government asks is not a construction of a statute, but, in effect an enlargement of it by the court, so that what was omitted, presumably (possibly) by inadvertence, may be included within its scope. To supply omissions transcends the judicial function.' A fortiori, it may not be done for the purpose of making punishable action which, on the face of the statute, is merely to be prevented." There is nothing in Union Bridge Co. v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523, that weakens the position.

This question as to the nature of the order is one of fact which must be judicially determined. Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082.

Power may not be delegated Constitutionally in the absence of well-defined limits, nor can it be delegated at all to do what the Constitution forbids, or vests in a different sphere. The court must exercise some degree of supervision over the activity of an Administrative body. Someone must have the power to say whether the Congress has complied with its charter of authority in the enactment of a statute. There can be no fault found with this statute so far as the Congress is concerned. The fault is with the Board or the persons who seek to act under the statute. The court is the repository of this power to scrutinize. An Administrative tribunal cannot be permitted to be the final judge of its own compliance with the law.

Having in mind all of the Constitutional reach that is bestowed during the existence of War, a judgment such as this cannot be permitted to stand unchallenged. The restraint prayed for must be granted. This decision should not be construed as going any further than is specifically indicated, to-wit, an order which fixes a penalty under this Act such as was entered here is invalid.