**Matter of Bradford M. SHEAR, Bankrupt.**
**No. 14435.**

United States District Court
N. D. California, N. D.
Jan. 31, 1956.

218

Kasch & Cook by Leo M. Cook, Ukiah, Cal., for petitioner.

McKenzie, Arata & Murphy by Gordon McKenzie, Santa Rosa, Cal., for respondent.

HALBERT, District Judge.

The bankrupt, as petitioner here, has filed with this Court a petition for a review of an order of the Referee, adjudicating him an involuntary bankrupt after finding that the bankrupt was not a "wage earner" within the meaning of the Bankruptcy Act, Title 11 U.S.C.A. § 1 et seq. The facts are that the bankrupt was employed as a truck dispatcher with an income of $600 per month at the times that are pertinent to these proceedings, and it was on the basis of these facts that the Referee made his determination that the bankrupt was not, for the purpose of these proceedings, a "wage earner."

Section 4, sub. b of the Bankruptcy Act, Title 11 U.S.C.A. § 22, sub. b, provides, in part, that "Any natural person, except a wage earner or farmer, * * * owing debts to the amount of $1,000 or over, may be adjudged an involuntary bankrupt * * *", and Clause (32), in

§ 1, of the Bankruptcy Act, Title 11 U.S. C.A. § 1, defines a "wage earner" as "an individual who works for wages, salary, or hire, at a rate of compensation not exceeding $1,500 per year."

The petitioner contends that the portion of § 1, of the Bankruptcy Act, applicable to this proceeding, is void and unconstitutional because it is an unreasonable classification and contrary to the intent of Congress. In essence the argument advanced by petitioner is that the definition of a "wage earner," as clearly and concisely set forth in the Bankruptcy Act, is void as contrary to congressional intent in that Congress, at the time the Bankruptcy Act was originally adopted in 1898, apparently intended to exempt all wage earners from involuntary bankruptcy proceedings, and the existing definition in the Bankruptcy Act does not accomplish this purpose in these modern days of higher income for all. The petitioner is not asking this Court to construe the statute in question; he is, in effect, asking the Court to repeal it, or at the very least amend it. Counsel for petitioner, with refreshing candor, stated to the Court at the time of the hearing on this matter that he was asking the Court to judicially legislate on the subject.

Petitioner argues that since an income of $1,500 was fixed by Congress as the breaking point where a person ceased to be a "wage earner" in 1898, when such a limitation covered almost all, if, in fact, not all of the persons who then worked "for wages, salary, or hire," a congressional intent is thus shown, and a dollars and cents income limitation should not now be permitted to circumvent the congressional intent as it is apparent to petitioner. Petitioner's argument is not without some reason, but it fails to rec-ognize the very important fact that Congress has been meeting regularly since 1898 and has adopted numerous amendments to the Bankruptcy Act, some of which were to the very sections in question, and even so, Congress has, during all of this period of time, chosen to leave the applicable provisions of the Act unchanged.

Petitioner's argument also has its illogical side.[1] It cannot be true that Congress intended to except *all* wage earners from involuntary bankruptcy when the Bankruptcy Act was originally enacted, for if that had been the intent, Congress could easily and clearly have expressed such intent by simply providing that *no* wage earner could be adjudged a bankrupt. Having elected to fix $1,500 as the breaking point, it is made very clear that Congress even then recognized that there were, or would be, wage earners who would earn over $1,500 per year, and it is apparent that it was the wish and intent of Congress that the law should apply only to those wage earners whose income did not exceed $1,500 per year.

With this analysis of petitioner's argument in mind, it becomes very apparent that the only issue involved in this proceeding is whether this Court should usurp the legislative duties assigned by the Constitution to Congress and in effect repeal the definition of a "wage earner," as it is set forth in Clause (32), of § 1, of the Bankruptcy Act, as quoted above.

The issue before the Court could easily be made the subject of a theoretical treatise dealing in technical definitions, social hypothesis, and various theories of economics, but actually the case hinges on a precept fundamental to our form of government. Such being the case, I pro-

---

1. To accomplish what petitioner seeks by way of a change in Clause (32), of § 1, of the Bankruptcy Act, it would be necessary to repeal the section outright, or remove the $1,500 limitations and substitute a new dollar and cents limitation. Only a moment's reflection makes it abundantly clear that such an act would be a patent act of legislation in its most palpable form. It, therefore, follows as a matter of plain logic that either change in the statute would be in contravention of the plain legislative intent expressed by Congress at the time the Bankruptcy Act was adopted in 1898.

pose to meet the issue squarely and decide it on a fundamental rather than on a theory.

■ While petitioner only urges that the portion of § 1, of the Bankruptcy Act applicable to these proceedings is void and unconstitutional, it will be well to first note that there can be no legitimate constitutional question asserted concerning the right of Congress to pass the Bankruptcy Act itself or the sections here questioned by petitioner. Article I, § 8, of the Constitution of the United States, grants Congress the authority and power to enact uniform laws relative to bankruptcy, and this power is both unlimited and supreme. Sturges v. Crowninshield, 4 Wheat. 122, 4 L.Ed. 529. The statutes challenged by petitioner are in no manner of speaking laws that create unequal classifications, and it is not within the power of this Court to question the propriety of these laws since they were legally enacted within the bounds set forth in the Constitution of the United States. This rule has been aptly stated by the late Judge Sawtelle in San Francisco Shopping News Co. v. City of South San Francisco, 9 Cir., 69 F.2d 879, at page 886, where he says, " * * * the Supreme Court has repeatedly declared that the courts are not concerned with the motives or purposes of a lawmaking body, save as they appear in the legislation itself, provided that the enactments are within the scope of the Legislature's authority."

Since the Bankruptcy Act is a properly enacted law, the petitioner can prevail in this proceeding only if there is legal merit to his claim that this Court has the authority, and the duty, to judicially legislate on the issues raised by petitioner, and that justice requires that this Court exercise this right, which petitioner asserts this Court has. Unless this Court has the right to judicially legislate, there is no need to consider any other point now raised by petitioner. In view of this circumstance, I shall first consider whether this Court has, in fact, the power or the authority to judicially legislate before any consideration is given to the propriety of doing so in this particular case.

■ Courts may, and should, interpret the law as it has been legally created or enacted, but courts should not add to, subtract from, repeal, or promulgate laws on their own initiative. In other words, the courts may clarify and make workable the laws that have been legally created, but the courts may not under our form of government judicially legislate. It is one of the fundamental principles of our form of government that the legislative power shall be separated from the judicial power. The power to declare what the law shall be belongs to the legislative branch of the government; the power to declare what the law is, or has been, belongs to the judicial branch of the government. See: Ogden v. Blackledge, 2 Cranch 272, 2 L.Ed. 276; Town of Koshkonong v. Burton, 104 U.S. 668, 26 L.Ed. 886, and United States v. Salberg, D.C., 287 F. 208. Neither of these branches of the government may invade the province of the other. Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. The courts declare and enforce the law, but they do not make the law. United States v. First National Bank of Detroit, 234 U.S. 245, 34 S.Ct. 846, 58 L.Ed. 1298; United States v. Consolidated Elevator Co., 8 Cir., 141 F. 2d 791; Hale v. Anglim, 9 Cir., 140 F. 2d 235, and Athens Stove Works v. Fleming, 4 Cir., 66 F.2d 855. This is for the reason that courts do not have the function of legislating or the power to legislate. See: United States v. Goldenberg, 168 U.S. 95, 18 S.Ct. 3, 42 L.Ed. 394; Koster v. Turchi, 173 F.2d 605; In re Blalock, D.C., 31 F.2d 612, and Braffith v. People of Virgin Islands, 3 Cir., 26 F.2d 646. The legislative department alone has the duty of making the laws, Commonwealth of Massachusetts v. Mellon, supra.

■ The judicial function to be exercised in construing a statute is limited to ascertaining the intention of the legislature therein expressed. Ebert v. Poston, 266 U.S. 548, 45 S.Ct. 188, 69

L.Ed. 435. Congressional intent is sought primarily in the language of the statute, and where this language expresses an intention reasonably intelligible and plain, it must be accepted without modification by resort to construction or conjecture. Thompson v. United States, 246 U.S. 547, 38 S.Ct. 349, 62 L.Ed. 876, and Gorin v. United States, 9 Cir., 111 F.2d 712. There is no need for resort to the rules of interpretation or construction when the language of the statute is plain and free from ambiguity. Osaka Shosen Kaisha Line v. United States, 300 U.S. 98, 57 S.Ct. 356, 81 L.Ed. 532; Adams Express Co. v. Commonwealth of Kentucky, 238 U.S. 190, 35 S.Ct. 824, 59 L.Ed. 1267; Athens Stove Works v. Fleming, supra, and Braffith v. People of Virgin Islands, supra. Even if the true application of the statute would have a harsh effect, the harsh effect cannot influence the Court's administration of that law. United States v. First National Bank of Detroit, supra; In re Blalock, supra, and In re Mitchell, 120 Cal. 384, 52 P. 799. It is not a function of a court to determine whether public policy, which is expressed in legislation, is well or ill conceived, Otis v. Parker, 187 U.S. 606, 23 S.Ct. 168, 47 L.Ed. 323, and Williams v. Mayor and City Council of Baltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015.

Courts are not at liberty to amend or repeal a statute under a guise of construction, Osaka Shosen Kaisha Line v. United States, supra, and Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62, nor is it within the judicial function of a court to supply omissions in a statute, even though that which was omitted may have been omitted by oversight or inadvertence. Wallace v. Cutten, 298 U.S. 229, 56 S.Ct. 753, 80 L.Ed. 1157; Iselin v. United States, 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566; and Ebert v. Poston, supra.[2] It is not for a court to extend the scope of a statute beyond the point where Congress indicated it would stop. 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States, 340 U.S. 593, 71 S.Ct. 515, 95 L.Ed. 566.

Even though it is true that courts may be entitled to depart from the strict wording of a statute in order to give the statute a reasonable construction when a literal construction would defeat the object or scope intended by Congress, Miller v. Bank of America, N. T. & S. A., 9 Cir., 166 F.2d 415, and cases cited therein, a court must be wary where meaning is sought to be derived from other than specific language, lest what professes to be mere rendering becomes creation. See: Palmer v. Commonwealth of Massachusetts, 308 U.S. 79, 60 S.Ct. 34, 84 L.Ed. 93. The case now before this Court presents a clear cut situation where, if this Court were to grant the relief sought by petitioner,

2. It is recognized that there is a split in the authorities on this point (See: 2 Sutherland Statutes and Statutory Construction (3rd Ed.) 452, § 4924, and the authorities there cited), but rational consistency on the principle of actual as well as theoretical separation of the judicial power from the legislative power of the government would seem to require the conclusion that the better reasoned and sounder rule is the second of the two recited in the Sutherland text, as follows:

"The courts cannot venture upon the dangerous path of judicial legislation to supply omissions or remedy defects in matters committed to a co-ordinate branch of the government. It is far better to wait for necessary corrections by those authorized to make them, or, in fact, for them to remain unmade, however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers."

Some authorities that have enunciated this precise rule are: State ex inf. Crow v. West Side St. Ry. Co., 146 Mo. 155, 47 S.W. 959; Railroad Commission of Indiana v. Grand Trunk Western R. Co., 179 Ind. 255, 100 N.E. 852; Davidson Bldg. Co. v. Mulock, 212 Iowa 730, 235 N.W. 45; Midwest Hotel Co. v. State Board of Equalization, 39 Wyo. 461, 273 P. 696, and Derby Club, Inc., v. Becket, 41 Wash.2d 869, 252 P.2d 259. This certainly is the rule laid down by the Supreme Court of the United States in the authorities cited above in the main text of the opinion, and it is, therefore, binding upon this Court.

it would obviously be creating rather than rendering, and this the Court must not do.

 There are valid reasons for this conclusion, too. The first and fundamental reason is, as has already been pointed out, that the Founding Fathers placed the power to legislate and create laws in the hands of others than the judiciary. But there are further and equally cogent reasons which make mandatory the conclusion that judicial legislation is both unsound and unwise because of its very nature. Laws created by legal and proper procedure are, under our form of government, the result of the will of the people expressed through their duly elected legislators. Laws thus properly enacted are adopted only after public debate and go into force on a definite date in the future, when all have notice of their existence and are afforded an opportunity to arrange their affairs and their conduct so as to conform to them. Further, laws thus duly enacted by the legislature can never fall within the unholy triumvirate of forbidden retrospective laws, *ex post facto* laws, and bills of attainder, whereas judicial legislation, such as petitioner here requests, must, by its very nature, almost invariably violate some of these fundamental principles, since such judicial legislation can come into existence only to change already existing laws and make these laws so changed apply to events that have previously transpired.

Of paramount importance, too, is the fact that a court that judicially legislates commits an obvious violation of the Constitution itself. For a court to usurp legislative power in violation of the affirmative edicts of the Constitution is more reprehensible than an unconstitutional act done by an individual, or individuals, who are unskilled in the law, and who are under no oath to uphold, protect and defend the Constitution. The mere fact that a court does an act in violation of the Constitution does not give the act done any more dignity or moral force than it would have if the act were done by another.

A court has the right and, indeed, in some instances, the duty, to point out the defects in, or the deficiency of, laws that come to its attention, but having fulfilled its duty in this regard, the duty and the right of the court ceases. At this point the court has met and fulfilled all of the obligations, which our system of government places upon it. The court having thus seen and done its duty, it then becomes the obligation of the people through their duly elected representatives in the legislative branch of the government to determine whether the advice of the judiciary is sound and should be followed. If, after pointing out what the court considers to be a defect or deficiency in the law, the people fail or refuse to heed the advice of the court, the court has no right, either legal or moral, to take the law into its own hands. Courts that assume that they have the omnipotent wisdom which gives them the power to determine what is good or bad for the people, even against the wishes of the people, are talking in terms of, and acting in direct conformity with modern day totalitarianism, and are taking steps toward a dictatorship or an oligarchy, both of which are completely foreign and offensive to our form of government, which is a government of laws and not of men.

Not only is there a moral issue involved in the problem of judicial legislation, but sound logic, domestic tranquillity and good government dictate that courts must not usurp this power. The problem of the instability of the law resulting from judicial legislation, and the vice of legislating by judicial edict, have been well and fully discussed elsewhere, so no useful purpose would be served by extending this opinion with what could only amount to a legal essay. Suffice it to observe, that Mr. Justice Roberts made some very pertinent observations on a similar situation in Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. He there said, 321 U.S. at page 112, 64 S.Ct. at page 463:

"In the present case, the court below naturally felt bound to follow and apply the law as clearly announced by this court. If litigants and lower federal courts are not to do so, the law becomes not a chart to govern conduct but a game of chance; instead of settling rights and liabilities it unsettles them. Counsel and parties will bring and prosecute actions in the teeth of the decisions that such actions are not maintainable on the not improbable chance that the asserted rule will be thrown overboard. Defendants will not know whether to litigate or to settle for they will have no assurance that a declared rule will be followed. *But the more deplorable consequence will inevitably be that the administration of justice will fall into disrepute.*" (Emphasis added.)

It is true that what Mr. Justice Roberts has said applies primarily to the doctrine of *stare decisis* and is written in a dissenting opinion, but it applies with compelling force to judicial legislation as the problem is presented by this case, and its sound reasoning and clear logic cannot help but impress anyone engaged in calm and deliberate consideration of this problem. Furthermore, *stare decisis* is a child of the courts to be tinkered with as the courts so will it, but cutting down or building up true and legal legislation in violation of the Constitution does not enjoy even the sanctity of the rights granted through *paterfamilias*.

An able dissertation on the problems growing out of judicial legislation has been written by Professor Frank E. Horack, Jr., and can be found in 25 Texas Law Review, at page 247. Professor Horack points out in his article, just as it has heretofore been pointed out in this opinion, that:

"The judicial change of a legislative rule occurs without any of the safeguards normally surrounding legislative action. The change is not made by elected representatives. It is not formulated into a written proposal upon which interested persons can express their opinion formally before the committees of Congress or informally by petition and through the press and on the air. There is no compliance with the bicameral principle of equal state representation in the upper house and popular representation in the lower. There is no opportunity for executive veto."

Among the other sage observations of Professor Horack in his article are two having direct bearing upon the case now before the Court. The first of these observations comes at page 248, and reads as follows:

"The capacity of Congress to change legislative policy is real. On questions of policy the Court is subordinate to the Congress, or at all events should be.

"If the doctrine of separation of power is valid, and judicial supremacy is essential to its preservation, then legislative supremacy in matters of legislative policy is equally necessary. Otherwise under the guise of law enforcement and interpretation, the Court in fact dominates the legislative function."

Another equally puissant observation comes at page 252, and reads as follows:

"In other words, by self-limitation the judiciary has recognized that the change of those rules, under which men have conducted their affairs and have assessed their rights and liabilities, is a legislative function to be exercised by the elected representatives of the people. And it is an insufficient answer that the representatives have not changed or will not change the existing policy of the law. So long as policy determination is their responsibility, it is their privilege to act wisely or unwisely or not to act at all."

One cannot conscientiously read the authorities on the subject with an open mind without being convinced that it is not only legally, but morally wrong, for a court to judicially legislate. Such a

course is an improper procedure, which this Court feels constrained to avoid. Having reached this conclusion, there is no need to consider any other points raised by petitioner.

It is not for this Court to question the wisdom of Congress by resort to conjecture or surmise. Congress alone has the authority to make the laws relative to bankruptcy in the United States. Judicial legislation, whether it is under the guise of construction of a statute, or otherwise, is to be avoided if the high respect for the judiciary in our form of government is to be maintained. The Referee decided this matter correctly, and his decision should be confirmed.

It is, therefore, ordered that the order of the Referee adjudicating petitioner an involuntary bankrupt after finding that the bankrupt was not a "wage earner" within the meaning of the Bankruptcy Act be, and the same is, hereby approved and confirmed.