BLAISE D'ANTONI & ASSOCI-
ATES, INC.
and
Blaise D'Antoni, Petitioners,

v.

SECURITIES AND EXCHANGE COM-
MISSION, Respondent.

No. 18416.

United States Court of Appeals
Fifth Circuit.

June 12, 1961.

Eberhard P. Deutsch, Bernard Marcus, Julian H. Good, New Orleans, La., for petitioners.

Thomas G. Meeker, Gen. Counsel, S. E.C., David Ferber, John A. Dudley, Washington, D. C., for respondent.

Before RIVES and WISDOM, Circuit Judges, and DAWKINS, Jr., District Judge.

PER CURIAM.

In the original opinion in this case, this Court approved the Securities and Exchange Commission's (1) refusal to allow Mr. Blaise D'Antoni to withdraw voluntarily his application for registration with the Commission as a broker-dealer and (2) refusal to allow D'Antoni & Associates, Inc., to withdraw voluntarily its registration as a broker-dealer.

(1) On rehearing, Mr. D'Antoni points to Section 15(a) of the Securities Exchange Act of 1934, 15 U.S. C.A. § 78o prohibiting an applicant from engaging in the business of a broker and dealer in over-the-counter securities until his registration becomes effective, and argues that Section 15(a) is an adequate safeguard of the public interest. Peti-

tioner distinguishes the applicant for registration as a broker-dealer from the applicant for registration of securities, since the latter is allowed to make offers, but not sales, while the application is pending. Section 15(a) *is* a protection, when a broker-dealer applies for registration, that does not exist when an issue of securities is registered. Nevertheless, Section 15(a), alone and isolated, was not intended as the only safeguard of the public interest. Section 15(a) does not stand alone; it is integrally linked with Section 15(b) of the Act, and together they form part of the regulatory scheme for the long-range protection of investors. See Peoples Securities Co. et al. v. S. E. C., 5 Cir., 1961, 289 F.2d 268. When Mr. D'Antoni filed his application for registration, he placed himself under the Commission's "scrutiny". The withdrawal of an ungranted application for registration as a broker-dealer may affect the public interest as well as the grant of an application. Cf. Columbia General Investment Corp. v. S. E. C., 5 Cir., 1959, 265 F.2d 559. By attaching important consequences, vitally affecting the applicant and his future status, to the revelation of improper activities on the *applicant's* part, Congress indicated that an applicant subjects himself to the Commission's scrutiny from the moment he files his application for registration. He cannot escape those consequences by withdrawing in the face of an S.E.C. investigation. All the sanctions enumerated in Section 15(b) to be taken *before* the application becomes effective, would be nullified—indeed, they would be meaningless—if we held that an applicant had the absolute right to withdraw voluntarily. This Court did not overlook Section 15(a) in the original opinion, and petitioner's reliance on its provisions here does not persuade us that the reasons assigned in our first opinion are in any way erroneous.

(2) D'Antoni, Inc., contends the Court erred in holding that the Commission did not have to support its order revoking the Company's broker-dealer registration by showing that actual injuries or losses were suffered. The petitioner's argument assumes that the purpose of the Act is merely to protect investors against "continuing" injury at the hands of those guilty of misconduct. This interpretation is far too narrow: the Act is also designed to protect the investing public against undue financial risks and future violations. The need for such protection is not "indefinite and equivocal," as petitioner argues, where, as here, in the face of repeated warnings by the Commission staff, the broker wilfully disregarded one of the most important rules of the Commission.[1]

The petition for rehearing is

Denied.

---

1. SEC Rule X15c3–1, 17 C.F.R. 240.15c3–1, prohibiting a broker-dealer from permitting his aggregate indebtedness to exceed 2000% of his net capital.