**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Charles E. COHN, Henry S. Giannetti, Sr., d/b/a Phoenix Securities, Defendants.**

**Civ. A. No. 577–60.**

United States District Court
D. New Jersey.
April 10, 1963.

selling securities for the account of others and engaging in the business of a dealer buying and selling securities for its own account while registered as a broker-dealer with the plaintiff while and at a time when the books and records required by Section 17(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. 78q(a) and the rule promulgated thereunder, 17 CFR 240.17a–3 are not maintained and kept current, and while and at a time when the defendants, as a registered broker-dealer, are permitting their aggregate indebtedness to all other persons to exceed 2,000 per centum of their net capital in contravention of Rule 17 CFR 240.15c3–1."

This order was issued after a contested hearing. The evidence adduced at that hearing, as reflected in the findings of fact made by the Court, clearly established that there had been a violation by defendants of the so-called "bookkeeping" and "net capital" provisions of the Securities Exchange Act of 1934, 15 U.S. C.A. §§ 78o(c) (3) and 78q(a).

In December, 1960, defendants moved to vacate the preliminary injunction. Defendant Cohn filed an affidavit in support of the motion. Therein he pointed out that the injunction prohibited carrying on the business of a broker-dealer only "so long as violations continue". The affidavit then went on to recite that the violations (relating to the maintenance and filing of proper records, and capital requirements) had been corrected, and that at all times since the entry of the injunctive order of July 21, 1960, defendants had been in compliance with the Act. The affiant then concluded with the statement that since "the defendants have demonstrated their good faith and ability to comply with the law and regulations pertaining to a broker-dealer", the preliminary injunction should be vacated. By order dated December 22, 1960, the Court denied the motion to vacate the injunction "without prejudice to the right of the defendants to make

Llewellyn P. Young, Regional Adm'r, William Lerner and John Cione, New York City, for plaintiff.

Abraham M. Stanger, New York City, for defendants.

AUGELLI, District Judge.

On July 21, 1960, this Court issued a preliminary injunction in this case which enjoined defendants, pending final determination of the matter,

"* * * from engaging in the business of a broker buying and

further application but not earlier than March 15, 1961".

Such further application was made in May, 1961, supported by the affidavit of defendant Giannetti, which was substantially the same as the one filed by Cohn in the earlier motion to vacate. Giannetti's affidavit stressed the fact of continued compliance by defendants with the applicable sections of the Securities Exchange Act of 1934, and also the improved financial stability of defendants, as shown by statements attached to both the Cohn and Giannetti affidavits.

After a review of the entire record the Court determined that the preliminary injunction should remain in force pending final hearing, and by order dated December 29, 1961, denied the motion to vacate and ordered the matter to be listed for final hearing at an early date.

On September 13, 1962, defendants Giannetti and Phoenix consented to the entry of a permanent injunction against them, and such order was signed on that date. The case was then set down for final hearing as to the defendant Cohn. This took place on December 11, 1962. The facts were stipulated by the parties and briefs pro and con were filed. It was also stipulated that all prior papers filed in this action by the parties could be used by the Court in its consideration of the remaining issue as to whether the preliminary injunction of July 21, 1960, should be dissolved or made permanent as to defendant Cohn.

The stipulated facts [1] are basically the same as those considered by the Court at the hearing for a preliminary injunction and on the two subsequent applications to vacate the injunctive order. It is admitted that at least on four separate occasions, defendants were in violation of the Securities and Exchange Commission's net capital rule, 17 C.F.R. 240.-15c3-1, which provides that no broker or dealer shall permit his aggregate indebtedness to all persons to exceed 2,000

per cent of his net capital. Defendants' trial balances of February 29, 1960, April 22, 1960, May 31, 1960 and June 24, 1960 all disclosed a capital deficiency. The trial balances of April 22, 1960 and May 31, 1960, were brought into apparent compliance with the net capital rule by resorting to mere bookkeeping entries. It is also admitted that the Commission's rule relating to the maintenance and filing of certain records (Rule 17 C.F.R. 240.17a-3) was violated on a number of occasions. These lapses, says Cohn, were more or less due to inadvertence and laxity, rather than to any wilfulness on the part of defendants.

At the present hearing it was brought to the Court's attention that defendant Cohn is 70 years of age; that he is an attorney-at-law of this State, having been admitted to practice in 1915; and that he ceased being a partner in Phoenix on or about February 24, 1961, when the Phoenix partnership was dissolved. Curiously enough, Giannetti's affidavit, verified on May 5, 1961, which was used on the second application to vacate the injunctive order, makes no mention of the dissolution of the partnership. It is a stipulated fact that no amendment to Phoenix's broker-dealer application reflecting this dissolution was filed until May 18, 1961.

Cohn's argument against a permanent injunction is based mainly on the fact that all illegal practices ceased after the commencement of this action on June 30, 1960 and the issuance of the preliminary injunction. It is contended that the presently existing injunctive order does not forbid broker-dealer activity, but only forbids such activity so long as violations continue; that since defendants at all times since the entry of the preliminary injunction, and continuing to the time Cohn retired from Phoenix in February, 1961, were in full compliance with the applicable provisions of the Securities Exchange Act, the preliminary injunction should be vacated and

---

[1]. The facts deemed to be pertinent are, for convenience, set forth as an appendix to this opinion.

no permanent injunction issue. The Court also is asked to take into consideration Cohn's age, his standing at the Bar, the fact that there is no allegation or proof that defendants acted intentionally or wilfully, and also that plaintiff is guilty of laches in failing to bring on the final hearing at an early date.

■■■ Standing alone, the age of a defendant and his station in life are irrelevant considerations in this type of action. The delay in bringing the matter on for final hearing can be ascribed in the main to the heavy work load of the Court prior to the recent appointment of additional judges. Moreover, the record does not reflect any overzealousness on the part of defendants to shorten the time interval. And it is well established, upon a proper showing being made, that an injunction may issue regardless of the mala-fides or bona-fides of a defendant, and regardless of a defendant's cessation of illegal conduct if the likelihood of the resumption of such conduct is found to exist. Securities and Exchange Commission v. Lawson, 24 F.Supp. 360 (D.Md.1938); Securities and Exchange Commission v. Universal Service Association, 106 F.2d 232 (7 Cir., 1939); Securities and Exchange Commission v. Okin, 139 F.2d 87 (2 Cir., 1943); Securities and Exchange Commission v. Boren, 283 F.2d 312 (2 Cir., 1960).

■■■ The likelihood of future violations must be considered in the light of past conduct. In this case there have been recurrent violations. The alleged contributions to capital, referred to in paragraphs 15 and 16 of the Stipulation of Facts (see Appendix), turned out to be illusory. There was also the failure to maintain and file proper records, which extended over a period of time. And while the Court is willing to accept defendants' statements that these violations were not wilful, it nevertheless must be borne in mind that the Securities Exchange Act was designed to prevent certain practices which might prove detrimental to the public interest. It should be obvious that compliance with the net capital rule and the rule requir-

ing maintenance of accurate records are important safeguards established for the protection of the investing public. Securities and Exchange Commission v. Graye, 156 F.Supp. 544 (S.D.N.Y.1957); Securities and Exchange Commission v. Mainland Securities Corp., 192 F.Supp. 862 (S.D.N.Y.1961); Blaise D'Antoni & Associates, Inc. v. Securities and Exchange Commission, 290 F.2d 688 (5 Cir., 1961).

Based on defendants' past performances, as disclosed by the record, the Court is satisfied that there exists the likelihood of a resumption of illegal conduct unless a permanent injunction is granted. Under the circumstances a permanent injunction will issue against the defendant Cohn, similar to the one entered against the other defendants. Such injunction is not intended to be punitive in nature. It does not seek to prevent Cohn from engaging in the business of a broker-dealer. In the public interest the injunction prohibits doing business in violation of the Securities Exchange Act and the rules promulgated pursuant thereto. If in fact defendant Cohn has no intention of again violating any provisions of the Act, the injunction can cause him no harm.

This opinion, including the stipulated facts set forth in the Appendix, shall constitute findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

Counsel for plaintiff will submit an appropriate order.

## APPENDIX

"1. Defendants Henry S. Giannetti, Sr. ('Giannetti') and Charles E. Cohn ('Cohn') were partners organized under the laws of the State of New Jersey doing business under the firm name of Phoenix Securities ('Phoenix'), with the principal place of business located at 94 Valley Road, Montclair, New Jersey.

"2. During the period from May 4, 1960 to February 24, 1961, and at all times hereinafter mentioned, the defend-

ant Phoenix was registered with the U. S. Securities and Exchange Commission ('Commission') as a broker-dealer in securities pursuant to Section 15(b) of the Securities Exchange Act of 1934 ('Exchange Act'), 15 U.S.C. 78o(b).

"3. Defendant Cohn first filed an application with the Commission for registration as a broker-dealer in about July of 1956, which registration became effective on August 7, 1956. Cohn is an Attorney at Law admitted to practice before the Bar of the State of New Jersey on February 1915, and currently is 70 years of age.

"4. In July of 1959, the defendant Giannetti became a general partner with Cohn, and the partnership became a successor to the sole proprietorship. No amendment to Phoenix's broker-dealer application was filed reflecting this fact until April 1, 1960.

"5. Cohn ceased being a partner in Phoenix on about February 24, 1961, when that partnership was dissolved. No amendment to Phoenix's broker-dealer application was filed reflecting this fact until May 18, 1961. The defendants Phoenix and Giannetti have continued to be registered with the Commission as a broker-dealer subsequent to this dissolution.

"6. On March 28, 1958 and March 23, 1960 defendant Phoenix was put on written notice to the effect that it had failed to file with the Commission a certified report of financial condition for the calendar years 1957 and 1959 respectively as required of every registered broker-dealer by Rule 17 C.F.R. 240.17a–5 promulgated under the Exchange Act.

"7. The partnership of Phoenix Securities failed to file a broker-dealer application as successor to the business of the sole proprietor (more fully set forth in paragraph 4, supra) as required by Section 15(b) of the Exchange Act, 15 U.S.C. 78o(b) until April 1, 1960. The broker-dealer application of April 4, 1960 was accompanied by a trial balance as of February 29, 1960. Plaintiff's authorized representative analyzed this trial balance to ascertain whether the firm's capital position conformed to the provisions of Rule 17 C.F.R. 240.15c3–1 promulgated under the Exchange Act.

"8. An analysis of the aforementioned trial balance revealed that defendants' aggregate indebtedness was $12,501.68; their required adjusted net capital was $625.08; their net current capital was $3,891.81; the prescribed deductions from their net current capital in proprietary securities positions was $5,916.94; their adjusted net capital was a deficit of $2,025.13; and the additional capital required to be in compliance with the Rule was, therefore $2,650.21.

"9. Defendants were advised of the capital deficiency as reflected by the trial balance of February 29, 1960 and in response to a request for a trial balance reflecting what action they had taken to effect compliance with the net capital rule, defendants submitted a trial balance as of April 22, 1960.

"10. An analysis of this trial balance revealed that their aggregate indebtedness was $56,319; their required adjusted net capital as set forth in Rule 17 C.F.R. 240.15c3–1 was $2,816; their net capital was a deficit of $268; the prescribed addition to its net capital deficit in proprietary securities positions was $3,649; their adjusted net capital was a deficit of $3,918; with the additional capital required to be in compliance with the rule being $6,733.

"11. An analysis of a trial balance as of May 31, 1960, submitted by plaintiff, disclosed that the firm's aggregate indebtedness was $30,251; the required adjusted net capital was $1,513; the net current capital was $9,908; the adjusted net capital after making the deductions specified by Rule 17 C.F.R. 240.15c3–1 was $4,611; indicating that defendants were in apparent compliance with the net capital rule.

"12. On June 23, 1960 plaintiff's authorized representative made an inspection of the books and records of Phoenix Securities and determined that defendants had not maintained and kept cur-

rent, as required by Section 17(a) of the Securities Exchange Act of 1934 and Rule 17 C.F.R. 240.17a–3 promulgated thereunder: a securities record or ledger reflecting separately for each security as of the clearance date all 'long' and 'short' positions (including securities in safekeeping) carried by such member, broker or dealer for his account or for the account of his customers or partners and showing the location of all securities long and the offsetting position to all securities short and in all cases the name or designation of the account in which each position is carried, was not made and retained since on or about May 5, 1960.

"13. Defendants' failure to maintain and keep current the above mentioned securities record prevented the Commission from making an independent verification and authentication of its financial picture at that time.

"14. During the course of the aforementioned inspection plaintiff's authorized representative abstracted and analyzed a trial balance as of June 24, 1960 to determine whether the firm was in compliance with Rule 17 C.F.R. 240.-15c3–1 and discovered that the firm's aggregate indebtedness was $40,382; their required adjusted net capital was $2,019; their net capital was a deficit of $3,523; the prescribed addition to its net capital deficit in proprietary securities positions was $2,740; their adjusted net capital was a deficit of $6,263; therefore Phoenix Securities needed $8,082 to come into compliance with the ratio limitations of the net capital rule.

"15. This examination also revealed that:

"(a) On April 27, 1960 a contribution was made to the capital account of the defendants' firm in the amount of $3,500 by means of a check drawn by Charles E. Cohn, a general partner of the firm, and deposited in the Montclair National Bank and Trust Company on April 27, 1960. On May 3, 1960 this check was returned by the bank marked: 'Payment Stopped.' The entry for this charge to the capital account was not made until June 3, 1960.

"(b) On May 31, 1960 a contribution was made to the capital account of Phoenix Securities in the amount of $5,000 by the son of Henry Giannetti, Sr. This check was not deposited in the Montclair National Bank and Trust Company until June 6, 1960 and the defendant firm immediately drew check #4962 for $5,000 to the order of FRANK COLLURA, a salesman of the firm. The proceeds were thereupon given by Collura to Giannetti's son. This amount was charged to the personal account of Henry Giannetti, Sr. and not to the capital account of Phoenix Securities.

"16. An analysis of the two foregoing transactions indicated that the capital of the defendant firm was not increased as purported in the trial balances of April 22nd and May 31, 1960 but were mere bookkeeping entries. Since these entries did not reflect the true facts, no credit was given for purposes of arriving at the firm's financial position, and it was determined that the defendant firm on those dates was not in compliance with the ratio limitations of the Commission's net capital rule, 17 C.F.R. 240.15c3–1.

"17. The defendant Phoenix Securities, from the period May 31, 1960 through June 23, 1960, made use of the mails or means or instrumentalities of interstate commerce to effect transactions in or to induce the purchase or sale of securities (other than an exempted security, commercial paper, bankers' acceptances or commercial bills) otherwise than on a national security exchange.

\*　　\*　　\*　　\*　　\*　　\*

"26. The defendants Charles E. Cohn and Henry S. Giannetti, Sr. d/b/a Phoenix Securities for the period May 5, 1960

through June 23, 1960 were conducting business as a broker-dealer in securities by use of the United States mails and the means and instrumentalities of interstate commerce during and at a time when they failed to maintain and keep current their books and records as required by 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78q(a) and Rule 17 C.F.R. 240.17a–3 promulgated thereunder.

"27. The defendants had been engaged as a broker-dealer in securities and as such broker-dealer during the period from approximately May 30, 1960 to February 24, 1961 and during said time made use of the mails and the means and instrumentalities of interstate commerce and by such use had effected transactions in and had induced and attempted to induce the purchase and sale of securities (other than the exempted security or commercial paper, bankers' acceptances or commercial bills) otherwise defendants had permitted their aggregate indebtedness to all other persons to exceed two thousand (2000) per centum of their net capital in contravention to Rule 17 C.F.R. 240.15c3–1."