# BRAFFITH

## v.

## PEOPLE OF THE VIRGIN ISLANDS

### No. 3812

Circuit Court of Appeals

Third Circuit

### April 27, 1928

*See, also, 26 F.2d 646 (same opinion),*
*and 1 V.I. 595 (29 F.2d 740)*

D. HAMILTON JACKSON, Christiansted, St. Croix, Virgin Islands, *for appellant*

JAMES C. FOX, Christiansted, St. Croix, Virgin Islands, *for the People*

Before BUFFINGTON, WOOLLEY, and DAVIS, *Circuit Judges*

WOOLLEY, *Circuit Judge*

This case calls for a construction of a penal statute of the Virgin Islands.

Braffith was charged with murder in the first degree. When arraigned, he pleaded guilty. The learned trial judge before accepting this unusual plea acquainted him with its meaning and consequences. He expressed full

understanding and stated that he had nothing to say why sentence should not be imposed. The judge accepted the plea but before pronouncing sentence he appointed a Board of Medical Examiners consisting of two physicians and one layman to inquire into the prisoner's mental condition. The Board made a unanimous report that in its opinion he "is in his sane and right mind and thoroughly able to determine right from wrong. His reactions clearly indicate that his moral conceptions are sufficiently developed to allow an appreciation of his crime." The Court then pronounced sentence of death. Immediately the prisoner's attorney moved for a stay of execution to allow him "a reasonable time to perfect an appeal from the sentence as provided by Title V, chapter 19, section 12 of the Code of Criminal Procedure." The learned trial judge, after carefully considering the provisions of the Code and holding they do not give a prisoner a right of appeal after pleading guilty, denied the motion. To the order denying the motion to stay execution the prisoner, through his attorney, excepted and gave notice of an appeal. The judge allowed the exception, granted an appeal from the order and entered a stay pending its determination. The case is here on a record altogether admirable for brevity and clarity of statement and argument, raising these two questions of law:

1. Is the judge of the District Court of the Virgin Islands authorized by the Code to sign and issue a death warrant commanding the sheriff to execute a prisoner on a plea of guilty before the proceedings and the judgment are reviewed by the appellate court having jurisdiction?

2. Is the attorney for a prisoner charged with murder required by law to take an appeal from a sentence of death where the prisoner has pleaded guilty?

These questions arise from sections 3 and 4 of chapter

5 and sections 12, 13 and 14 of chapter 19, Title 5 of the Code of Criminal Procedure of the Virgin Islands█, which we quote (with their seemingly conflicting provisions italicized) as follows:

"Section 3. Every person guilty of murder in the first degree shall suffer death, or if there be extenuating circumstances, shall suffer confinement in the penitentiary for life. Upon a plea of guilty the court shall determine the punishment. Upon a verdict of guilty the jury in the verdict shall recommend whether the punishment be death or imprisonment.

"Section 4. When judgment of death is rendered, a warrant signed by the judge . . . must be drawn and delivered to the sheriff. It must . . . appoint a day on which the judgment is to be executed, *which must not be less than sixty nor more than ninety days from the time of the judgment. . . .*"

Section 12. In *every* case in which a sentence of death has been pronounced, it shall be the duty of the attorney for the defendant to take proper appeal of said case to such appeal court as has jurisdiction of appeals from the courts of the Virgin Islands of the United States.

"Section 13. In case the *attorney* for the defendant in a case where a death sentence has been pronounced *fails* to perfect an appeal *as provided in the section next preceding*, the clerk of the District Court shall notify the District Judge of that fact, and it shall then become the duty of the District Judge, *within thirty days*, to have prepared and certify . . . a record of the case *and the evidence submitted to the jury,* and to file the same with the appellate court for review.

"Section 14. *In all such cases* the time for execution of the death sentence is stayed until after final action by the appellate court — after which, if the sentence of death is sustained, the same shall be executed as herein provided."

The learned trial judge in a well-reasoned opinion construed these provisions as not affording or requiring an appeal on behalf of one charged with murder and sentenced to death on a plea of guilty, holding, against the provision for an appeal "in every case," that it would be unnecessary, if not futile, to take an appeal in a case where the accused had pleaded guilty, and relying mainly on the implication of section 13, prescribing an appeal record containing "the evidence submitted to the jury," that appeals are contemplated and allowable only where on a plea of not guilty the case has been tried to a jury and a record containing evidence can be made; and, finally, relying on an interpretation of the expression in section 14 that "in all such cases" a stay shall be allowed pending appeal as applying only to "cases" where, in compliance with the section immediately preceding, a record with the trial evidence has been prepared and sent up.

For this appellate court of the United States to construe a statute of a territory, adopted but yet not incorporated into the United States (The Insular Cases, 182 U.S. 1, 222, 244, 21 S. Ct. 743, 762, 770, 45 L. Ed. 1041, 1074, 1088; 190 U.S. 197, 23 S. Ct. 787, 47 L. Ed. 1016; 195 U.S. 138, 24 S. Ct. 808, 49 L. Ed. 128, 1 Ann. Cas. 697; Soto v. United States (C.C.A.3d 1921), 1 V.I. 536, 273 Fed. 628, 633), is a matter not only of grave importance to the condemned but of some delicacy when the relation of the two governments, each sovereign in its sphere, is considered. Over the Virgin Islands, previously known as the Danish West Indies, the United States first exercised legislative dominion by what is there locally known as the Organic Act,

being the Act of Congress of March 3, 1917, ch. 171, 39 Stat. 1132 (48 U.S.C. §§ 1391, 1392, 1394-1396), providing that until the Congress shall otherwise provide, local laws, "in so far as compatible with the changed sovereignty," shall remain in force to be administered by local judicial tribunals with right of appeal to this court. So far as we have been informed this is the only law which the Congress has enacted with respect to those islands. Thus the United States, recognizing and in a sense creating this municipal organization (Downes v. Bidwell, 182 U.S. 244, 21 S. Ct. 770, 45 L. Ed. 1088), has left to its people full right to enact, amend and repeal laws for their own governance without hindrance by the United States except, it may be, when not "compatible with the changed sovereignty"; and so, since the Organic Act, the people of the Virgin Islands have seen proper to enact and declare as one of their laws the statute here in question. This court therefore is sensitive to its responsibility that in construing this law it should not violate any principle of public policy or impair or unsettle the prerogatives of that territorial government.

■-■ Before construing the statute in question we bring into view certain canons of construction which are peculiarly applicable to this case. 25 R.C.L. 955 et seq. The first is that when the language of a statute is plain and unambiguous and it conveys a clear and definite meaning there is no occasion to construe it and no justification for enforcing it otherwise than in accordance with its plain meaning. This is because courts have no legislative powers. When, however, a statute is ambiguous in terms or because of doubtful language it would seem to have two meanings, courts are called upon to construe it by finding which meaning reflects the intention of the Legislature that enacted it. 36 Cyc. 1106. This is the fundamental canon of construction. But the true intention of

a legislative body is sometimes not plainly told by its words. In that event the law provides further rules, as that laws should be construed so that they shall not lead to injustice, oppression, or absurd consequences. To this end courts adhere closely to the use of words in their commonly understood meaning and in immediate relation to their subject-matter. Merchants' Loan & Trust Co. v. Smietanka, 255 U.S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A.L.R. 1305; Rodenbough v. United States (C.C.A.3d 1928) 25 F.2d 13. Another rule is that every part of an act should be given effect conformably with the legislative intent; therefore all its language should be considered and brought into accord. Pennington v. Coxe, 2 Cranch 33, 2 L. Ed. 199; United States v. Fisher, 2 Cranch 358, 2 L. Ed. 304. It is never safe and rarely permissible to base a construction on a particular word or phrase and to ignore other words and phrases.

 Rules of construction, however, distinguish between civil and penal statutes; the former may be construed liberally; the latter must be construed strictly.

The statute in question is a highly penal statute providing punishment by death and prescribing the offender's rights of trial and appeal. The rule has long been settled in American jurisdictions that all such statutes must be construed strictly against the state and favorably to the liberty of the citizen. 8 R.C.L. 59, 60; 25 R.C.L. 1081 et seq. This rule was founded on the tenderness of the law for the rights of individuals and upon the plain principle that the power to decide what is a crime and the power to punish are vested in the legislative, not in the judicial department. United States v. Wiltberger, 5 Wheat. 76, 5 L. Ed. 37. Penal statutes will not be construed to include anything beyond their letter even though within their spirit; nothing can be added to them and nothing can be taken from them by inference or intendment. Hronek

v. People, 134 Ill. 139, 24 N.E. 86, 8 L.R.A. 837, 23 Am. St. Rep. 652. It has been repeatedly stated that in extension of the letter of a penal law nothing may be assumed by implication (Fairfax v. Hunter, 7 Cranch 693, 3 L. Ed. 453; 25 R.C.L. 1083), and it may be said with equal force in respect to the statute here in question that nothing restricting the letter of the law may be so assumed. Though penal statutes are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the Legislature. United States v. Lacher, 134 U.S. 624, 628, 629, 10 S. Ct. 625, 33 L. Ed. 1080; United States v. Illinois Central R. Co. (C.C.A.) 177 Fed. 801, 803. They are to be construed sensibly, yet always with a view to the object aimed at by the Legislature. Gibson v. Jenney, 15 Mass. 205. And so nearly every canon of statutory construction is directed to the search for the legislative intention, which after all is the central and controlling consideration in every such problem. Therefore the rules of strict construction of penal statutes allow a court to call to its aid other rules of construction and give each its appropriate scope. These include the right of a court to look for and find, when possible, the problem which the Legislature had in mind (Rodenbough v. United States (C.C.A.3d 1928) 25 F.2d 13), to consider the conditions with reference to the subject-matter that existed at the time of the enactment (Church of Holy Trinity v. United States, 143 U.S. 457, 12 S. Ct. 511, 36 L. Ed. 226; Northern Pacific v. United States (C.C.A.) 213 Fed. 162, L.R.A. 1917A, 1198), and the causes that induced the enactment, including the policy of the local government (Wisconsin Central R. Co. v. United States, 164 U.S. 190, 17 S. Ct. 45, 41 L. Ed. 399). Sometimes the subject may be viewed in the light of its history. Denn ex dem. Scott v. Reid, 10 Pet. 524, 9 L. Ed. 519; Stewart v. Kahn, 11 Wall. 493, 20 L. Ed. 176; Preston v. Browder, 1 Wheat. 115, 4 L. Ed. 50. In respect to

the statute here in question, however, the record discloses no antecedent public policy and no history leading up to the enactment; indeed, it is frankly admitted in the record that the genesis of the statute is not known nor are the reasons that moved the legislative body to enact it in its precise form. Therefore in searching for the intention of the Legislature we are in this instance confined to the words of the act itself.

Turning to the relevant provisions of the statute (1921 Code, St. Croix), we shall review them section by section. In the first (section 3 [Title IV, ch. 5]) there is no ambiguity. Indeed, in singularly clear and certain terms it declares that "every person guilty of murder in the first degree" shall suffer death or life imprisonment. It provides for the determination and imposition of such penalties in cases of two kinds: One, when the prisoner has pleaded not guilty and the case has been tried to a jury; the other, when the prisoner has pleaded guilty and has thus waived trial.

Passing for the moment section 4 (Title V, ch. 19), which provides for a death warrant, naming the day of execution "which must not be less than sixty nor more than ninety days from the time of judgment," the Legislature then said by section 12 (Title V, ch. 19) — "In every case in which sentence of death has been pronounced [which would seem to mean in all cases of the two kinds for which punishment is specifically provided by section 3 (Title IV, ch. 5)] it shall be the duty of the attorney for the defendant" to take an appeal. If this were the whole statute there would be no ambiguity and no occasion to construe it. But the legislative body of the Islands, evidently fearing occasional dereliction on the part of a defendant's attorney in the performance of the duty to take an appeal thus imposed, went further and (by section 13 [Title V, ch. 19]) prescribed that should he

"in a case where a death sentence has been pronounced" fail to perfect an appeal "as provided by the section next preceding" (which imposes on him a duty to take an appeal "in every case" in which such a sentence has been pronounced), the District Judge shall make up a record and certify it to the appellate court, and he shall do it within thirty days, which is well within the ninety-day period of the death warrant. Still there is no ambiguity. But this section which imposes on the judge the duty of making and sending up a record on default of the attorney for the defendant prescribes that the record shall include "the evidence submitted to the jury." As there is neither jury nor evidence in a case where the prisoner has pleaded guilty, such a record in a case with such a plea cannot be made, hence the inference raised at the argument below and relied on by the learned trial judge that an appeal does not lie when a record containing evidence submitted to the jury cannot be made.

Section 14 (Title V, ch. 19), the concluding relevant provision of the statute, provides that, "in all such cases" the execution shall be stayed until after final action by the appellate court. The learned trial judge regarded the words "all such cases" as referring only to cases having records with evidence mentioned in the section immediately preceding, but it is possible that the expression (with the emphasis on the word "all") refers to and embraces the correlative expression of section 12 (supra) granting and requiring an appeal "in every case." The two expressions are not inconsistent or antagonistic.

Unusual as these provisions may be, they nevertheless constitute the law which the legislative body of the Virgin Islands of the United States had full authority to enact and did enact. The evil which that body thereby sought to avoid or the good it sought to attain, or, generally, the reasons which moved it to the enactment are obscured

by the admitted fact that the origin of the provisions is not known. But, manifestly, there were reasons. Scanning the terms of the provisions, it is clear the legislative body was sensitive to the death penalty. It provided a mandatory appeal only in cases with that penalty. The duty to take an appeal which is imposed on the defendant's attorney does not extend to cases where the penalty is life imprisonment but is restricted to cases, and then to "every case," in which sentence of death has been pronounced. The Legislature may have been moved to its action by the fact that the inhabitants of those islands, living alone out in the ocean, far removed from the government of their newly adopted parent, feared just a little the power of a judge coming from a distant land, trained in a different jurisprudence and at first not learned in local Danish law. It may have been influenced in its action by the numerical preponderance of one race likely to be governed for a time by another race. Aside from these mere conjectures it is certain the legislative body, moved by some considerations, intended to throw around all its citizens, any one of whom might at any time be accused of crime, the protection of review by appeal where death is involved, even in cases where the accused has pleaded guilty, in order perhaps to assure the regularity of the proceedings and the validity of the sentence.

After this opinion had been rendered and certified to the District Court of the United States for the Virgin Islands, A. E. Stakemann, Esq., a lawyer resident at Christiansted, becoming interested in the construction given the statute in question, searched the Danish laws in force in the Islands before they were acquired by the United States in an effort to discover, if possible, some antecedent statutory enactment or expression of public policy that conceivably might have influenced the legislative body of the Islands, after their acquisition, to enact the statute

in its somewhat unusual form and found a Danish law of the 16th of December, 1840, section 1, then in force in the Islands which, when translated, reads as follows:

"When any one at a general Lower Court has been sentenced to life imprisonment such judgment, even should the party thus sentenced declare himself satisfied with same, and neither the Public, owing to special circumstances, find cause for appeal, the sentence shall nevertheless not be executed before it has been tried at the Superior Court.

"In such cases where the Lower Court is directly under appeal to the Supreme Court, cases of the aforesaid significance, shall always be appealed to the Supreme Court; this however, shall not be applicable to cases tried at the Superior Court of Copenhagen as first instance.

"Sentences of death shall always, not alone be appealed to the Superior Courts, but also to the Supreme Court (of Denmark), which, in case they result in punishment of death, shall be notified to the King."

It is altogether possible that when the people of the Virgin Islands came to frame their laws under the "changed sovereignty," they had this old Danish law in mind and purposely re-enacted its provisions. At any rate the main provisions of the old and new statutes are, mutatis mutandis, substantially the same and certainly in the provisions of the old statute there is no ambiguity.

We acknowledge our indebtedness to the local lawyer for his professional interest and personal industry and for bringing the result thereof to our attention.

██ Except for the provision of section 13 (supra), that in the event of default by the defendant's attorney a record containing "the evidence submitted to the jury" shall be made by the judge and sent up on appeal, the statute would be free from uncertainty. It is made uncertain only by the implication of that provision that

an appeal, in the exigency, should be taken only in cases of conviction by a jury on evidence enough to make up a record. But however viewed, that is a mere implication; and an implication of a statute should not be permitted to outweigh and annul an express provision of a statute such as the one here, which provides for an appeal "in every case."

We are, on our construction of the statute, constrained to answer in the negative the first question and in the affirmative the second question raised on this appeal and to hold that the duty imposed on the defendant's attorney to perfect and take an appeal in a case where sentence of death has been pronounced is mandatory even when pronounced after a plea of guilty.

The order of the District Court is reversed, with direction that an appeal be perfected and prosecuted conformably with the statute.