**Clement MAGRAS, individually and in his capacity as Commissioner of the Department of Licensing and Consumer Affairs, Appellant/Respondent,**

v.

**Alan D. SMITH, Kathleen Mackay, Adam G. Christian and Barbara Weatherly, Appellees/Petitioners,**

**De Vos & Co., and the Virgin Islands Bar Association, Nominal Appellees/Intervenors.**

T.C. Civ. No. 167–1993.
D.C. Civ. App. No. 94–11.

District Court, Virgin Islands, D. St. Thomas and St. John.

Argued April 12, 1995.

Decided Sept. 16, 1996.

Pamela Lynn Wood, Asst. Atty. General, V.I. Department of Justice, St. Thomas, V.I., for Appellant/Respondent.

Denise Francois, St. Thomas, U.S.V.I., for Appellees/Petitioners.

Before THOMAS K. MOORE, C.J., and RAYMOND L. FINCH, J., District Court of the Virgin Islands; and PATRICIA D. STEELE, J., Territorial Court of the Virgin Islands, Division of St. Croix, Sitting by Designation.

OPINION OF THE COURT

PER CURIAM.

The Commissioner of the Department of Licensing and Consumer Affairs ["Department" or "DLCA"] appeals the Territorial Court's permanent injunction prohibiting enforcement of his administrative order requiring attorney-employees of private law firms in the Virgin Islands to obtain and pay the fees for separate business licenses. Appellant, as Commissioner of DLCA ["Commissioner"], is the respondent in a Territorial Court action in which certain attorneys petitioned for judicial relief from his administrative order. Appellees are the original petitioners, namely, the attorneys who were subject to the Commissioner's administrative determination, as well as the nominal appellees, intervenors below, who did not participate in the appeal. For the reasons set forth herein, we affirm.

FACTS

On September 29, 1992, the Commissioner issued letters to the original petitioner-appellees, all of whom were attorneys employed by private law firms, warning them that they "have been practicing without a license as

provided in V.I.C. Title 27 § 302 since January, 1991," and that they were required to obtain business licenses if they have been "in private practice." Appendix ["App."] at 132. V.I.Code Ann. tit. 27, §§ 301–07 provides for the licensing of businesses, occupations, professions, and trades ["licensing law"]. In his letters, the Commissioner relied on legal advice that licensing under DLCA is required **in addition to** the provisions of 4 V.I.C. § 441 under which the Territorial Court is authorized to license and otherwise govern the practice of law in the Territory.[1] Letter from Attorney General Jada Finch–Sheen dated September 14, 1984, App. at 138–39 ["September 14th Letter"].[2] The Attorney General distinguished the two, opining that DLCA licenses attorneys under Title 27, while the court authorizes the practice of law *per se* under Title 4 and applicable local rules of court:

> To privately practice law, an attorney must also be licensed pursuant to Chapter 9, Title 27 of the V.I.Code. This chapter provides for the licensing of attorneys, not for the practice of law per se ... the fair implication is that the license to do business as a lawyer is personal to the attorney and not to the profession. As such, the business under which an attorney practices whether as a sole practitioner, in a professional corporation, in a partnership or whatever is immaterial.

*Id.*

Appellees contested the Commissioner's position that they were required to get separate business licenses from DLCA on the basis that they were employees of law firms whose partners or shareholders were properly licensed and that there was no statutory provision requiring separate business licenses for such employees. App. at 133. Appellees also requested an administrative hearing on the issue.

A series of communications followed in which the parties reiterated their positions. DLCA denied appellees' request for a hearing and demanded immediate payment of the business license fees, threatening publication of the attorneys' names as delinquent licensees and referral to the Attorney General's Office for investigation and potential prosecution if they did not comply.[3] In response, appellees filed a verified petition on February 26, 1993, along with a motion for temporary restraining order ["TRO"], preliminary injunction, writ of mandamus, and declaratory judgment. The Territorial Court issued a TRO that same day, and, after a hearing on March 10, 1993, the parties filed post-hearing briefs.[4]

On December 17, 1993, the trial judge granted permanent injunctive relief, holding that "jurisdiction over the admission and discipline of attorneys," the "rules and regulations governing the practice of law locally," and the "requirements for an individual to practice law in the Virgin Islands must come from the court and not from DLCA[,] ... [although] DLCA may properly require that law firms offering their services to the public obtain the standard business license." App. at 21–22. The judge accordingly found that the Commissioner erred by interfering with or obstructing "any individual attorney's practice of law." *Id.* at 22. In reaching this conclusion, the court interpreted the licensing law as not requiring every individual to get a business license to engage in his or her occupation, profession or trade, commenting

1. Under V.I.Code Ann. tit. 4, § 441 and rules promulgated thereunder, attorneys admitted to the bar by the Territorial Court maintain their license to practice and to appear in Virgin Islands courts by paying annual dues to the Virgin Islands Bar Association, and local rules permit limited appearances by attorneys not admitted to the bar, *e.g.*, those working for the Department of Law or those admitted to practice in other jurisdictions. Appendix ["App."] at 138–39.

2. By law, the Attorney General's office generates legal opinions upon request from the Governor or the Legislature. The legal impact of this opin-

ion, since it was prepared for DLCA rather than the Governor, is not addressed in this decision.

3. As a preliminary matter, the trial court held, appellant conceded, and we agree that appellees were entitled to due process by way of hearing before imposition of any administrative sanctions. See discussion *infra* in text.

4. On March 10, 1993, appellee DeVos & Co. was permitted to intervene. On April 13, 1993, appellee Virgin Islands Bar Association moved to intervene. The request was granted on May 5, 1993.

that, "[s]urely, the legislature did not intend to have every single non-government employee licensed by DLCA." *Id.* at 17.

The licensing statute speaks of licensing those engaged in or conducting a business, occupation, profession or trade. *See* 27 V.I.C. 301. The statute does not specifically require that individuals be licensed. Rather the statute, in order to avoid the absurd result that all persons employed in the Virgin Islands, except those covered by the blanket exclusion found at 27 V.I.C. 306,[5] obtain a DLCA license, must be read as a statute requiring a license of those who engage in or conduct the businesses to which the trades, occupations and professions are connected.

*Id.* at 19. This timely appeal ensued.

### DISCUSSION

■ This issue of first impression is one of statutory interpretation: whether the provisions for the licensing of businesses, occupations, professions, and trades administered by DLCA under Title 27 permit each individual attorney engaged in the private practice of law in the Virgin Islands to be required to obtain a separate business license, even if she works as an employee of another attorney or law firm which already has such a license from DLCA. We note that neither side challenges the proposition that the territorial government may raise revenue by imposing a license fee on a private attorney in the nature and form of a business tax, which is different from and in addition to a lawyer's license to practice law.[6] What is at issue here is the scope and meaning of "all persons and associations engaged in the designated businesses, occupations, professions and trades," as used in 27 V.I.C. § 302. In other words, the question before us is whether the

Legislature intended the licensing law to allow DLCA to collect an occupation tax from every single person working as an attorney in the private practice of law, or whether it intended to allow DLCA to collect such a license fee only from the ownership entities—the sole proprietors or firms—engaged in the business of practicing law.

■ Our review of such pure questions of law is plenary. *In re Barrett,* 1995 WL 450466, V.I. BBS 91CI159A.DX2 (D.V.I.APP. Jan. 31, 1995); *Nibbs v. Roberts,* 31 V.I. 196 (D.V.I.APP.1995). As previously observed by this appellate tribunal,

> [t]he starting point for interpreting a statute is always the language of the statute itself. Courts presume that the legislature expresses its legislative intent through the ordinary meaning of the words it chooses to use, and if the statutory language is clear, it is not necessary to look for congressional intent from legislative history. The plain meaning of the words ordinarily is regarded as conclusive, and it is relevant when interpreting terms in an act passed to curb specific evils to apply the principle that "[w]ords take on meaning in the company of other words." [Where], the language of the statute is clear and without ambiguity; ... there is no need to review the sparse legislative history.

*HOVIC v. Richardson,* 894 F.Supp. 211, 32 V.I. 336 (D.V.I.APP.1995), *appeal dismissed,* No. 95–7381 (3d Cir. May 7, 1996) (citations omitted). Thus, all of the pertinent language of the licensing law, 27 V.I.C. §§ 301, 302, 304, 306, 307, not just some words or phrases, should be considered and construed as a whole.[7] This Court therefore examines the

---

5. Section 306 exempts certain agencies and organizations from the requirements of the licensing law:
   The provisions of this chapter shall not apply to agencies of the Virgin Islands or of the United States Government, to religious, charitable, benevolent, or educational organizations when not engaged in the conduct of business pursuits for profit, or to transactions involving a charitable or benevolent purpose.
   27 V.I.C. § 306.

6. *See, e.g., Royall v. Virginia,* 116 U.S. 572, 6 S.Ct. 510, 29 L.Ed. 735 (1886) (The revenue

license is merely a receipt that the occupation tax has been paid; it is not an authority to practice law); *see also Hollar v. Government of the Virgin Islands,* 857 F.2d 163 (3d Cir.1988) (the licensing fee imposed on private attorneys does not constitute a double tax and its increase in 1983 did not violate equal protection or due process).

7. *See, e.g., Braffith v. People of the Virgin Islands,* 1 V.I. 582, 26 F.2d 646 (3d Cir.1928).

licensing law as a whole,[8] in addition to the trial court's uncontradicted references to it's statutory intent and DLCA's historical approach to this issue. App. at 17–18, 272–75.

We first turn to the specific language of the licensing law, the main provisions of which are 27 V.I.C. §§ 301 & 302. Pertinent language of section 302(a) levies fees "upon all **persons and associations** engaged in the designated businesses, occupations, professions and trades in the Virgin Islands of the United States: ... Attorney $500 ...," with subsection (b) requiring that "[a]ny **person or association** engaged in a business, occupation, profession, or trade not designated in subsection (a) of this section or not covered by any other provision of this Code shall obtain an annual license at a fee of $100." (Emphasis added). Without more, these words do not preclude either the position taken by the Commissioner or the position taken by the appellees.

Looking at the language of section 301, however, we find that it lends support to the appellees:

(a) **Every person or association** wishing to engage in any business, occupation, profession, or trade listed in section 302 of this chapter, as a condition precedent to engaging in any such business, occupation, profession, or trade, shall apply in writing to and obtain from the Commissioner ... a license to engage in or conduct such business, occupation, profession or trade.

(b) Applications for licenses ... shall be made on forms prescribed and furnished by the Commissioner. As a part of or in connection with any application **the applicant** shall furnish information concerning his identity, personal history, experience, business record, purposes, record of any conviction of any offense which is a felony or crime involving moral turpitude ..., and any other pertinent facts that the Commissioner may reasonably require.

In the case of corporations or partnerships the **preceding requirements shall be applicable to all of the shareholders or partners** . . . .

(c) If the applicant is a partnership or a corporation, the application shall designate **each member, officer, or employee who will exercise the powers to be conferred by the license upon the partnership or corporation.** The Commissioner may require any such member, officer or employee to furnish him with the information required of applicants under subsection (b) of this section. . . .

27 V.I.C. § 301 (emphasis added).

The only reasonable, logical and consistent inference we draw from the highlighted words is that the license is to be granted to the partnership or corporation itself, not to 'each member, officer or employee who will exercise the powers of the license'. The context makes clear that the referent of 'preceding requirement' in subsection 301(b) is the disclosure of pertinent items of personal history, which is thus made applicable to 'all shareholders or partners'. By requiring designation of 'each member, officer or employee who will exercise the powers of the license', subsection 301(c) then gives the Commissioner the ability to require disclosure of such personal history, not only, from the ownership entity and its shareholders or partners, but also, from the non-owning persons employed within the entity who will be exercising on behalf of the entity the powers granted by the license.[9]

This inference that it is the law partnership or corporation itself from which the licensing revenue is to be collected, and not its individual employees, is confirmed by DLCA's administrative interpretation of the words of the licensing law reflected in the language and requirements used in the license application form the statute directs the Commissioner to prescribe. *See* App. at 186–90. First of all, this form, which is distributed to all applicants, including professionals such as attorneys, is titled 'APPLICATION FOR UNITED STATES VIRGIN

---

8. Even if we were to look for the legislative history, no such history is available for section 302.

9. While the language of subsections 302(b) & (c) would thus support the conclusion that not even the individual shareholders or partners can be required to be obtain separate licenses, appellees do not go this far. Br. for Appellees at 8.

ISLANDS **BUSINESS LICENSE.'** It warns against commencing **'BUSINESS OPERATIONS UNTIL PROPERLY LICENSED TO DO SO.'** It requires the name of the business to be listed, in addition to the name of the 'Individual or Corporation requesting the License.' It wants to know the physical location from which the business will be conducted. It requests the applicant to check off the 'TYPE OF ORGANIZATION' it is: a sole proprietorship, reflecting the word 'person' used in subsections 301(a) & (b) and 302(a); or a corporation, a partnership, a joint venture, reflecting the word 'association' in those same subsections.[10]

The only mention of employee is the application's request for the total estimated number of employees; it does not require the applicant to identify these employees by listing their names and/or positions. None of the remaining requirements on the application form have any relevance to the question whether separate license fees can be taxed to attorney-employees of private law firms.[11]

Additional historical administrative interpretation by the Department of its statute gives further confirmation that the licensing law permits collection of the license tax from at most the shareholders or partners of a private law firm. Up until September of 1992, when the Commissioner sent his letters to these appellees, DLCA had never required an attorney to apply for and pay for a separate business license unless the attorney had an ownership interest in the law partnership or corporation by which she was employed. The Commissioner's letters were thus a drastic variation of the Department's past policy. We thus have considered the Department's traditional administrative interpretation of its enabling statute, in light of its purpose and origin, in concluding that we will disregard its variation of that historical interpretation which prompted this lawsuit.[12]

We also consider and find persuasive the Department's application of the licensing law to analogous situations, e.g. travel agents and agencies, who are also listed professionals in section 302. The Department concedes that a travel agent working as an employee of a travel agency is not required to pay a separate license fee DLCA. App. at 274–75. Although DLCA attempts to distinguish an attorney-employee because she is "a practicing attorney, and [has] to go to court," the Commissioner admits that the professional licensure of an attorney to practice before a court comes from the judiciary, not from DLCA. App. at 138–39, 275. We find this attempt to explain such disparate treatment of attorney-employees and travel agent-employees to be based on a distinction without any legal significance.

A reading of other provisions of the licensing law fully supports our conclusion that section 302 only applies to attorneys who are sole proprietors or owners of an entity engaged in the business of the practice of law. For example, section 304, which outlines the procedure for revocation, denial, or suspension of a DLCA license, states that a decision to not issue, to revoke, or to renew a 'license **to do business'** rests with the Commissioner. 27 V.I.C. § 304(j) & (k) (emphasis added). Further, section 306 exempts agencies of the government and religious, charitable, benevolent, or educational organizations from the requirements of the licensing law, to the extent they are "not engaged in the **conduct of business** pursuits for profit." (emphasis

---

**10.** The form adds a bureaucratic catch-all 'other' category, although it is difficult to divine what other kind of business organization would fall under the section 301's 'person or association' than sole proprietorship, corporation, partnership or joint venture. Whatever 'other' means, there is nothing in logic, the application form, or in the instructions for completing the application, to hint that 'employee of the organization' could constitute a 'type of organization'.

**11.** The form requires the applicant to estimate the annual volume of sales, presumably gross fees for a law practice; to state whether the applicant has complied with the applicable provi-

sions concerning trade names, unemployment compensation and workers' compensation laws. The 'Owner, Operator, Manager' of the 'Name of business establishment' is required to certify at the end of the application that it has complied with the Civil Rights Act. App. at 190.

**12.** *Accord, Polychrome v. Krigger,* 29 V.I. 311, 350 (3d Cir.1993) (citing *National Muffler Dealers Assn. v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979)); *see generally Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–51, 859–66, 104 S.Ct. 2778, 2781–86, 2790–93, 81 L.Ed.2d 694 (1984).

added). An attorney employed by, but without an ownership interest in, a sole proprietorship, partnership or professional corporation, acts on behalf of the law firm and conducts the business of her employer. Since she does not do business as an individual, an attorney-employee does not come under the licensing law and we hold that DLCA's attempt to extend its coverage to such attorney-employees is in violation of its statutory direction.

This Court also rejects the DLCA's post-September 1992 interpretation of section 302 because it would usurp the authority to regulate the admission and discipline of attorneys the Legislature has vested in the judiciary under 4 V.I.C. § 441. If the Department had the authority to require each individual attorney to obtain a business license in order to practice law, then subsection 304(a)(2) would arguably give the Commissioner the power to refuse to issue, to revoke, or to suspend an individual attorney's ability to practice law based on moral character or previous misconduct. Such authority in an administrative agency of the executive clearly would violate the constitutional concept of separation of powers. Even the pre-September 1992 practice of collecting licensing fees from the attorney-owners of law firms comes perilously close to running afoul of the authority of the judiciary to govern the discipline of attorneys in this jurisdiction. The DLCA would do well to tread softly in exercising its authority under section 304(a)(2) against any attorney.

■ Although we cannot agree with the broad proposition that the court is the only body authorized to require licenses and collect fees therefor from attorneys practicing in the Virgin Islands, this Court does agree with the Territorial Court that the judiciary is the body authorized to govern the admission, discipline and practice of each individual attorney in this jurisdiction. The scope of the Department's authorization under the licensing law does not extend to collecting a business license fee from each individual attorney-employee of a sole proprietor or other law firms.

## CONCLUSION

■ Based on the record before us, we hold that licensing law does not empower the Commissioner of the Department of Licensing and Consumer Affairs to require each individual attorney who has no proprietary interest in her law-firm employer to obtain and pay for an individual business license. Distinctions between certain listed professionals in section 302 which are not statutorily explicit are 'distinctions without a difference' and therefore impermissible. The Department's attempt to alter its own traditional interpretation of what constitutes a 'professional' who is subject to its licensing scheme cannot be condoned. Accordingly, we affirm the Territorial Court's permanent injunction dated December 17, 1993. In so holding, however, this Court disagrees with the Territorial Court's finding regarding the judiciary's role in licensure. We find that an attorney operating a business is subject to DLCA's authority in its business capacity as would any other business. We distinguish this type of regulation from the judiciary's role in maintaining the professional quality of the practice of law before our courts.